359 So.2d 78 (1978)
STATE of Louisiana
v.
Eddie Lee MARSHALL.
No. 60734.
Supreme Court of Louisiana.
May 22, 1978.
*79 Alton T. Moran, Director, Daniel R. Atkinson, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Lennie F. Perez, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
*80 SUMMERS, Justice.
In a single two-count bill of information defendant Eddie Lee Marshall, Ernest Anderson and Rufus McDonald were jointly charged with the armed robbery and attempted aggravated kidnapping of Edward Gaines. After waiving trial by jury, they were jointly tried. Defendant Marshall was found guilty on both counts. On the armed robbery count he was sentenced to serve thirty years at hard labor without benefit of parole, probation or suspension of sentence. On the attempted aggravated kidnapping charge he was sentenced to ten years at hard labor, the sentences to run consecutively. Anderson was also found guilty on both counts. He was sentenced to twenty years without benefit of parole, probation, or suspension of sentence on the armed robbery charge and to ten consecutive years for the attempted aggravated kidnapping charge. His appeal was affirmed in State v. Anderson, 358 So.2d 276 (La.1978). McDonald was acquitted.
In this appeal Marshall relies on three assignments of error. They are without merit and his conviction and sentence are affirmed.
About midnight on November 6, 1975 Edward Gaines stopped his Buick automobile at a stop sign on Napoleon Street at its intersection with Louise Street in the city of Baton Rouge. The stop occurred near the Chatter Box Lounge. He was surprised when Eddie Marshall approached his car, opened the door on the driver's side, put a knife to Gaines' side, told him that if he resisted he would cut his heart out, and made Gaines move over. Marshall then took control of the vehicle and drove a short distance to a house at 266 Louise St.
Upon arrival Gaines was forced at knife point into the residence where Lester Anderson and Rufus McDonald were present. Thereafter, while threatened by Marshall wielding the knife, Gaines' shirt and coat were removed and tried on for fit by Marshall and Anderson. Marshall then took Gaines' shirt and belt and demanded his money. There followed an attempt by Marshall to force Gaines to perform oral sex upon him. When Gaines resisted, Marshall wiped a rag containing human excrement across Gaines' face.
The three defendants then forced Gaines into the rear of his automobile and tied his hands. With Anderson driving they crossed the river into West Baton Rouge Parish. On the way Gaines' pleas to be freed were rejected. As they approached a gas station for gasoline, Gaines managed to free his hands and escaped from his captors. They fled the scene and were later apprehended at the house on Louise St. where a knife and belt were seized as evidence by the arresting officers.
Assignment 1. Defendant moved to suppress the objects seized by the police. After a hearing the trial judge suppressed the knife and belt. Later during the trial while Gaines was testifying as a State witness he stated that when he was driving home on the night of November 6, 1975 and while he was stopped at the intersection, the door on the driver's side opened and a sharp instrument was pressed against his side; whereupon defense counsel objected to any testimony about a sharp instrument, contending that the suppression of the knife as evidence made testimony concerning that object inadmissible. The objection was overruled.
Following this ruling Gaines again described the knife as "pointed" and defense counsel renewed his objection to testimony referring to the suppressed knife. Still later in his testimony Gaines testified that Marshall took his belt at the house on Louise Street and defense counsel renewed his objection. With each objection the defense moved for a mistrial.
It should be noted that no mention was made in Gaines' testimony of the fact that the knife or belt had been seized by the police. References to these objects occurred while the witness was recounting the events which were elements of the offenses for which defendant was being tried  facts and circumstances in which he was forcibly cast in the role of victim. All of the testimony related to events of which the witness had personal knowledge obtained *81 prior to the illegal search and seizure. At no time were the knife or belt introduced into evidence.
In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the United States Supreme Court held "that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in state court." But we do not understand this holding to mean that no reference can be made to tangible evidence which has been suppressed. It is one thing to say that the State cannot make affirmative use of the objects unlawfully obtained. It is another to say that the State cannot use information obtained by witnesses at a time and place entirely unrelated to the unlawful search and seizure, when the information is not come by as a result of the unlawful search and seizure.
Even in its broadest concept, the fruit of the poisonous tree doctrine has been a rule prohibiting the government from using, in any manner prejudicial to the accused, information derived from facts learned as a result of the unlawful acts of its agents.
In this case no violation of defendant's Fourth Amendment rights resulted from the illegal search, because facts were testified to which were learned by the witness at a time and place unrelated to that illegality. The facts referred to in the testimony therefore had an independent source not tainted in any way by the illegal search.
In a case where a prosecution witness was found on the premises of a gambling casino during an illegal search and seizure, his testimony relating to gambling activities was not considered inadmissible as the "fruit of the poisonous tree" where it was shown that government agents had seen him frequenting the casino on a number of previous occasions. United States v. Barrow, 363 F.2d 62 (3d Cir. 1966), cert, denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541.
The rule which supports the views expressed here is not new. It was recognized in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), almost sixty years ago. There it was said that facts learned as a result of information obtained in an illegal search and seizure do not become sacred and inaccessible by reason of such illegality, and that if knowledge of them is gained from an independent source, they may be proved like any others. Adhering to the views expressed in that case, courts in a number of cases have held or recognized that the "fruit of the poisonous tree" doctrine excludes evidence obtained from or as a consequence of an unlawful search and seizure but that doctrine does not require the exclusion of such evidence when knowledge thereof can be attributed to an independent source. United States v. Avila, 227 F.Supp. 3 (D.C.Cal.1963); State v. O'Bremski, 70 Wash.2d 425, 423 P.2d 530 (1967); 43 A.L. R.3d 399. See also this Court's decision in State v. Anderson, 358 So.2d 276 (La.1978).
Based upon these principles, there is no merit to this assignment.
Assignment 3: Having testified as a state witness Gaines was cross-examined. Defense counsel asked if it was not a fact that Gaines stopped his car in front of the Chatter Box Lounge to ask Marshall to come over so that he, Gaines, could proposition him for homosexual relations that night. Gaines denied emphatically that he stopped for that purpose, explaining that he stopped because a stop sign at the intersection required him to do so.
Continuing cross-examination defense counsel asked Gaines if he had ever engaged in homosexual activities with Marshall. Gaines answered that he had not. He was then asked if he had engaged in homosexual activities with "anyone else". When the State's attorney objected, defense counsel remarked that the question involved a critical issue of credibility. In all probability this remark was based upon the defense theory that Gaines propositioned Marshall, came to the house on Louise Street voluntarily, committed homosexual acts with Marshall, and then refused to pay Marshall. The trial judge sustained the *82 objection, and the ruling is assigned as error. No further effort was made by the defense to pursue this line of questioning, although cross-examination thereafter did seek to overcome Gaines' testimony to the effect that Marshall attempted to force him into an act of oral copulation. Cross-examination on this latter point was without objection. At no time was other evidence of the victim's alleged prior homosexual activities sought to be introduced by the defense.
Keeping in mind that this was a bench trial, and recognizing the rule that credibility of a witness may be attacked generally by showing that his general reputation for truth or for moral character is bad or it may be attacked only insofar as his credibility in the case on trial is concerned, this assignment has no merit. La.Rev.Stat. 15:490.
When the general credibility of a witness is attacked, the inquiry must be limited to general reputation, and cannot go into particular acts, vices or courses of conduct. La.Rev.Stat. 15:491; State v. Banks, 307 So.2d 594 (La.1975); State v. Corbin, 285 So.2d 234 (La.1973). In the factual context of the case at bar the interrogation at issue concerning homosexual activities of the victim with "anyone else" is not permitted by the rule. It is an inquiry into "particular acts, vices or courses of conduct." As such it is an improper general attack upon the witness' reputation in order to impugn his credibility. General reputation is established by witnesses who know the person whose reputation is at stake, know the community or general area in which he lives and know the reputation he has acquired in that community. No such proof was offered.
Proof of a person's bad moral character is limited to reputation under the rule relating to assault upon a person's credibility. It may not be shown by particular instances.
However, the rule does permit an attack on the witness insofar as his credibility in the case on trial is concerned. In that respect, defense counsel did question the victim asking if he had propositioned Marshal and whether he had engaged in homosexual activities with Marshall. Other questions were propounded to the victim concerning the defense contention that homosexual conduct did in fact occur between Marshall and Gaines. This was denied by Gaines. Thus an attempt was made to impugn the witness' credibility "in the case on trial" without objection by the State.
Considering the fact that the defense did produce testimony tending to establish Gaines' homosexuality in this case, other like conduct with "anyone else" at another time and place was collateral to the issue before the court. Attempts to contradict the witness on that collateral issue was improper.
The reasons for such a rule are obvious. Not that the witness may not have lied  but the fact that Gaines denied his homosexuality in the case was in reality collateral to charges of armed robbery and attempted aggravated kidnapping. Homosexuals, too, can be robbed and kidnapped. Suppose the defense theory  that Marshall was propositioned and Gaines did in fact perform deviant sex acts with him  had been established to the satisfaction of the trial judge, would that lessen the effect of proof of robbery and kidnapping when physical evidence and the testimony of disinterested witnesses supported the essential elements of those crimes? The answer is that it would not. Unless inquiry into such a collateral issue is limited, courts would be involved in endless interrogation of witnesses about matters shedding no light upon the real issues before it. The trial judge in the exercise of his discretion, who, in this bench trial, was judge of the credibility of the witnesses on all issues, including guilt or innocence, properly drew the line by his ruling. By the ruling he stalled the defense excursion into matters the judge undoubtedly realized would have no bearing on the guilt or innocence of the accused. La.Rev. Stat. 15:275. Faced with the proposition that a wide latitude must be accorded on cross-examination, and a feeling that the trial judge may have drawn a thin line by *83 his ruling, it is nevertheless this Court's view that the specter of error was indeed harmless. No miscarriage of justice or denial of substantial rights to the accused has resulted. La.Code Crim.Pro. art. 921.
This assignment has no merit.
Assignment 9: Marshall's codefendant Anderson took the stand in his own defense. In answer to defense counsel's questions, Anderson testified that he had been convicted of burglary and sentenced to imprisonment in the State penitentiary. He was then asked if he had been in trouble since his release from the penitentiary, to which he replied, "No, I haven't." On cross-examination the State's attorney asked Anderson if he had been arrested since his discharge. Defense counsel objected. The trial judge sustained the objection, ruling that only interrogation concerning convictions would be permitted. Thereafter defense counsel moved for a mistrial. The motion was denied.
No witness, whether he be defendant or not, can be asked on cross-examination whether he has ever been indicted or arrested, and can only be questioned as to convictions, in accordance with the rules of evidence prescribed by law. La.Rev. Stat. 15:445, 446, 495. It was correct, therefore, for the trial judge to sustain the defense objection. But it is not understood that the law mandates a mistrial in every instance where a question is asked involving indictment or arrest to which an objection has been sustained before the witness has answered.
Articles 770 and 771 of the Code of Criminal Procedure are designed to guard against improprieties in the presence of the jury. These articles do not mandate a mistrial in a bench trial when such a prohibited question is propounded. State v. Maney, 242 La. 223, 135 So.2d 473 (1961).
In this bench trial, this single instance of an unanswered question referring to arrest did not prejudice this trial judge. The assignment is therefore without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
DENNIS, J., concurs with reasons.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by TATE, J.
DENNIS, Justice, concurring.
I join in the majority opinion and assign additional reasons for concurring in the rejection of defendant's assignment number three complaining of the trial judge's limitation of cross-examination during the testimony of the victim.
The common law tradition of "cross-examination to credit" permits counsel to inquire into the associations and personal history of the witness, including any particular misconduct which would tend to discredit his character, though it has not been the basis for conviction of crime. By the rule obtaining in most jurisdictions of the United States, in recognition of the danger of victimizing witnesses and of undue prejudice to the parties, cross-examination concerning acts of misconduct is subject to a discretionary control by the trial judge. 3A Wigmore, Evidence, § 983 at 847 (Chadburn rev. 1970); McCormick, Evidence, § 42 (Cleary ed. 1972). According to McCormick, some of the factors to be considered are:
"* * * (1) [W]hether the testimony of the witness under attack is crucial or unimportant, (1) the relevancy of the act of misconduct to truthfulness, depending upon the rule followed in the jurisdiction in that respect, (3) the nearness or remoteness of the misconduct to the time of trial, (4) whether the matter inquired into is such as to lead to time-consuming and distracting explanations on cross-examination or re-examination, (5) whether there is undue humiliation of the witness and undue prejudice." McCormick, § 42 at 83. (footnotes omitted)
In my opinion, the majority American view correctly leaves the repression of possible abuses by such cross-examination in the discretion of the trial judge, and the judge in the instant case reasonably exercised his discretion. In addition to the reasons stated in the majority opinion I find the following factors significant: the defense theory that the victim voluntarily *84 came to the house for homosexual purposes is not necessarily inconsistent with the victim's testimony that he was robbed at the house and forcibly taken across the river into West Baton Rouge Parish where he escaped. Thus evidence of extrinsic homosexual acts by the victim was of limited probative value as to the elements of the charged crimes. The broad inquiry into whether the victim had ever engaged in homosexual acts with anyone else in his life could have encompassed misconduct extremely remote from the time of the trial, led to time-consuming and distracting explanations, and caused undue humiliation of the witness.
TATE, Justice (dissenting).
The issue is close, and the majority's view is quite persuasive. Nevertheless, I dissent from the holding that Assignment 3 presents no error in its restriction of cross-examination under the circumstances. See my dissenting opinion in a companion case, State v. Anderson, 358 So.2d 276 (La.1978).
CALOGERO, J., concurs.