625 So.2d 1351 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Burnell CHAPMAN, Jr., Defendant-Appellant.
No. CR93-331.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*1352 Paul Peter Reggie, Lake Charles, for State of Louisiana.
Carl Arthur Leckband Jr., Lake Charles, for Burnell Chapman, Jr.
Before YELVERTON, KNOLL and THIBODEAUX, JJ.
KNOLL, Judge.
This appeal arises out of the conviction and 3 year sentence of Burnell Chapman for Third Offense DWI. In his appeal, defendant advances ten assignments of error. For reasons which follow, we affirm.

FACTS
On July 24, 1991, defendant was involved in an automobile accident on the I-210 bridge in Lake Charles. No field sobriety tests were administered since defendant was injured and under the care of ambulance attendants. However, ambulance attendants and other witnesses advised the State Police that defendant had been removed from the driver's side of his vehicle. At the hospital, defendant submitted to a blood alcohol test. The test revealed a blood alcohol content of 0.18 grams percent. As a result of two prior DWI offenses, defendant was charged with DWI, Third Offense.
Assignment # 1
Defendant urges the indictment be quashed because it did not contain the date on which the predicate offenses occurred.
*1353 We find this omission of no consequence. LSA-C.Cr.P. Art. 483 provides:
"If it is necessary to allege a prior conviction in an indictment, it is sufficient to allege the name or nature of the offense and the fact, date, and court of the conviction."
It is apparent to us the phrase "of the conviction" modifies all three preceding nouns, "fact", "date", and "court". Therefore, the critical date is that of conviction, not the date of the offense. Defendant has cited no authority to the contrary. The indictment in question does indicate the dates of the prior DWI convictions. We find no merit to this assignment of error.
Assignment # 2
Defendant next contends that because of improper "Boykinization", his prior DWI convictions cannot be used as the predicate offenses to a DWI, Third Offense. In his brief, defendant alleges he made a contemporaneous objection to the introduction of the prior DWI convictions. However, his transcript reference is only to the trial minutes. The minutes do reflect defendant made an objection during the testimony of State's witness, Ann Waggoner, but it is not possible to determine from the minutes what the grounds for his objection were. Furthermore, for whatever reason, defendant's designation of transcript did not request Ms. Waggoner's testimony be included in the record. Since it cannot be shown this issue was specified as an error in the trial court, we have no authority to review the alleged error. Uniform RulesCourts of Appeal Rule 1-3.
Assignment # 3
In this assignment, the defendant asserts the court erred in allowing a City Court Clerk to prove the identity of the defendant for one of the predicate offenses. At the beginning of trial, the State advised the court that it might have additional witnesses, but the names of those witnesses were not known at that time. Defendant objected unless the witnesses were to be used only for rebuttal. The court sustained the objection.
During the course of the trial, the State called Sulphur City Court Clerk, Dee Davis. Davis had not been named previously as a witness. Defendant objected on this ground, but the objection was overruled. The record at this point is devoid of any reference to the trial court's prior ruling. Apparently the trial court did not recall the prior ruling, nor did defendant bring it to the court's attention.
We do not find the trial court's failure to sustain the objection reversible error. First, we note defendant is not entitled to discover the names of State witnesses unless the State has initiated discovery. C.Cr.P. 727(B); State v. Naas, 409 So.2d. 535 (La.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). There is no indication the State did so here. Secondly, defendant has failed to show he was prejudiced by the lack of disclosure of the witness. The Sulphur City Court DWI conviction testified to by Ms. Davis was an element of the crime with which defendant was charged. Defendant knew the State must introduce the Sulphur DWI record. Absent such surprise, defendant may not claim he was unfairly prejudiced. State v. Gradney, 487 So.2d. 473 (La.App. 3 Cir.1986).
Assignment # 4
Defendant contends the trial court erred by allowing a City Court Clerk to read from handwritten notes in the presence of the jury.
The "handwritten notes" defendant refers to are the actual minutes of the Sulphur City Court. This was not error. Further, we do not find anywhere in the record defendant making an objection to this alleged error. This assignment is without merit.
Assignment # 5
Next defendant claims the trial court erred in refusing to grant a mistrial when a City Court Clerk referred to other crimes by defendant. The defendant bases this argument on two instances that occurred during testimony establishing the Sulphur City Court DWI. The first instance involved the witness describing the minute entry of the conviction during direct-examination.
"State: What does it [the minute entry] say happened in court that day?
*1354 Witness: It says that the defendant appeared in court with Mr. Fowler, his attorney, his DWI second charge was amended to first offense."
The second instance was on cross-examination.
"Defense: Do you remember Mr. Chapman specifically on that date?
Witness: On that date? No, sir, I can't say thatI remember him being in our court several times, but not on that particular day."
The defendant moved for a mistrial after each of these statements. The trial judge denied both motions. On the second motion for a mistrial, the trial court offered to admonish the jury. The defense declined, "I don't want an instruction. I think the damage has been done. I stand on the record."
We begin our analysis by recognizing a denial of a mistrial will not be disturbed absent an abuse of discretion. State v. McFerson, 583 So.2d. 516 (La.App. 3 Cir. 1991), writ denied, 588 So.2d 113 (La.1991). Next, we note C.Cr.P. Arts. 770 and 771 dealing with comments at trial referring to defendant's prior criminal activity. Article 770 provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;"
To the contrary, Article 771 dictates:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
It is not at all clear that the witness' remarks referred to "another crime committed or alleged to have been committed". As to the statement of DWI, Second Offense being reduced to first offense, the Fourth Circuit faced a similar issue in State v. Sorina, 499 So.2d. 376 (La.App. 4 Cir.1986). In Sorina, due to a clerical error, language included in a bill of information, which amended a charge from first-degree murder to second-degree murder, was inadvertently read by an assistant district attorney. The Fourth Circuit did not require a mistrial under these facts. In the case sub judice, Ms. Davis' comment was directed only to the offense under consideration. Any indirect implications of her remarks do not warrant a mistrial.
We reach the same conclusion as to Ms. Davis' comment, "I remember him being in our court several times." While this may imply past trouble with the law, it does not specifically identify defendant as having committed other crimes. It is also relevant that it was not the State, but the defense that elicited this testimony from the witness during cross-examination.
Furthermore, we find Ms. Davis to be a "witness" within the meaning of Article 771 rather than a "court official" under Article 770. Ms. Davis' position in the 14th Judicial District Court was no different from any other witness. She was placed under oath and subject to rigorous cross-examination. The fact that she was a clerk with the Sulphur City Court does not transform her into a court official in the 14th JDC. In accordance with Article 771, the judge offered to instruct the jury, but the defense declined. The trial court properly denied the mistrial. We will not disturb its ruling.
*1355 Assignment # 6
In this assignment, defendant contends the court erred in allowing an unqualified person who had drawn the blood sample to testify. Defendant claims the person drawing his blood did not meet the statutory requirements of LSA-R.S. 32:664. This statute requires the person withdrawing blood be a "physician, registered nurse, qualified technician, or chemist". Defendant's objection stems from the licensing system utilized by the State Board of Nursing. Darren Caillouet was the hospital employee who took defendant's blood sample and subsequently testified at trial. The registration system was explained by Caillouet at trial. Upon graduation from a four year nursing program in May of 1991, Caillouet was issued an "applicant's license". This license was effective until he received the results of his board examination taken in July. Upon receiving a passing grade on his board exam on August 26, 1991, Caillouet was licensed as a registered nurse. Caillouet took defendant's blood sample on July 24, 1991, after Caillouet had taken his board exams, but before he had received the results. In allowing Caillouet to testify, the trial court reasoned:
"While strict compliance is necessary, as a general rule, I do not think that we need to become so over-technical that the results of this specimen would be excluded simply because of the failure on the date in question to have the actual license per se from the state. We have an individual who completed his educational requirements. We have an individual, more importantly, who had taken his boards. Had he not taken the boards, the court might take a different view. But he had taken the boards. So his status remained the same so far as qualifications, expertise, knowledge, etcetera."
The trial court's logical approach to this issue is sound reasoning. We find this sufficiently complies with this technical requirement. We note the trial court has great discretion in deciding which witnesses are qualified as experts. Armstrong v. Lorino, 580 So.2d. 528 (La.App. 4th Cir.1991), writ denied 584 So.2d. 1166 (La.1991). This assignment is without merit.
Assignment # 7
Here defendant asserts the trial court erred in allowing into evidence a blood sample without a proper chain of evidence. Defendant bases his objection primarily on the fact the original blood alcohol (BAC) kit was destroyed and only a photostatic copy of the top of the kit was preserved. While the BACs have expiration dates printed on the side of the kit, the photocopied portion of the BAC does not show this. The State Police toxicologist, Rosalind Glaze, testified it was standard procedure to destroy BACs after one year. Ms. Glaze explained this was done purely for economic and space saving reasons.
The defendant contends the State should be required to prove the BAC kit's expiration date had not lapsed. We note Ms. Glaze testified that it is standard procedure to check the expiration date before using the BAC kit and if expired, a notation is made to that effect. Ms. Glaze was the toxicologist who tested the defendant's blood sample, and she testified that the BAC kit had not expired at that time. Defendant has cited no authority indicating these facts require the blood sample be excluded from evidence. The only case cited by defendant, Brown v. Department of Transportation, 604 So.2d. 99 (La.App. 3rd Cir.1992), is completely distinguishable on its facts. In Brown, the court went through a litany of problems associated with the admissibility of the blood sample: no evidence of the kind of kit used; whether the kit was approved by the regulations; whether it had preservatives in it; whether it was outdated; and whether the machine that tested the blood was in proper operating condition. The Brown court also noted the state trooper did not recall what he did with the sample. In the case sub judice, there was testimony showing each of these potential irregularities were dealt with appropriately. Between the testimony of the toxicologist, Ms. Glaze; the nurse taking the blood sample, Darren Caillouet; and the state trooper arresting the defendant; we find there was a sufficient chain of evidence. The trial court did not err.
*1356 Assignment # 8
This assignment was not briefed and is considered abandoned. Uniform Rules Courts of Appeal 2-12.4.
Assignment # 9
The defendant contends the verdict is contrary to the law and evidence.
In his brief, defendant bases this assignment on the State's failure to establish the date of the first predicate DWI offense. This is simply a restatement of assignment # 1. There we found the date of the offense was not critical, but rather the date of the conviction. This assignment has no merit.
Assignment # 10
Finally, defendant claims the trial court erred in finding him a habitual offender. Defendant questions the evidentiary sufficiency of a Texas offense being proved by fingerprint cards.
First, we note there is no record of a habitual offender sentencing hearing. There is only the transcript of the DWI, Third Offense sentencing hearing. Secondly, we find nothing in the record concerning Texas convictions. Apparently, as in assignment # 2, defendant is referring to occurrences that have not been included in the record. Since defendant has not designated the transcript necessary for review of this matter, we may not consider this assignment.

ERROR PATENT
A review of the record reveals one error patent. LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing, the trial court shall inform defendant of the prescriptive period for post-conviction relief. The record shows that the trial court did not so inform defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. Art. 921. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, we direct the district court to inform defendant of the provisions of Article 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. Fontenot, 616 So.2d. 1353 (La.App. 3rd Cir.1993).

DECREE
For the foregoing reasons, we affirm defendant's conviction and sentence. Additionally, we direct the trial court to inform defendant of the prescriptive period for post-conviction relief by sending appropriate written notice to defendants within 10 days of the rendition of this opinion and file written proof of notice in the record of the proceeding. Costs are assessed to defendant, Burnell Chapman.
AFFIRMED.