WALTER J. ROTHSCHILD, Judge.
| pEmile Delaneuville[1] was charged with a fourth offense of operating a motor vehicle while intoxicated in violation of LSA-R.S. 14:98. He was arraigned and pled not guilty to this charge. Defendant waived his right to a jury trial and the matter proceeded to a bench trial. Following trial, the trial judge issued a judgment finding defendant guilty as charged. Defendant subsequently filed motions for a new trial and a post-verdict judgment of acquittal, both of which were denied.
Defendant was sentenced to ten years with the Department of Corrections, all but sixty days suspended, to be served consecutively and uninterrupted. The judge also ordered defendant to serve one year of home incarceration with the restriction that defendant could not drive during that time and with curfew restrictions to be imposed by the probation officer. Additionally, the judge ordered defendant to be on active probation for five years with the condition that defendant 13have an Interlock device installed in his vehicle during the probationary period. The judge further informed defendant of the conditions of his probation. Lastly, the judge ordered defendant to pay a mandatory fine of $5,000.00 and court costs in the amount of $303.50. Defendant now appeals on the basis of several assignments of error.
FACTS[2]
On December 27, 2007 at approximately 1:20 p.m., Sergeant Aron Hastings and Lieutenant Lester Rulf, enforcement agents with the Louisiana Department of Wildlife and Fisheries, were travelling northbound along Highway 51 in St. John the Baptist Parish when they passed a green truck parked on the shoulder of the road facing south. As the agents passed, they observed the occupant of the driver’s seat, who was later identified as defendant, toss a beer can and a plastic bag out of the truck. Upon observing this, the agents turned their vehicle around to get behind defendant’s truck to stop him for littering. While the agents made the U-turn, defendant got back on the road and headed southbound. The agents followed defendant for 0.7 miles before pulling him over. When Sgt. Hastings made contact with defendant, he observed an 11-year-old boy in the passenger seat and informed defendant that he had been stopped for littering.[3] Defendant responded that he was not hunting. Sgt. Hastings again told defendant that he had been stopped for littering, to which defendant again responded that he was not hunting. Sgt. Hastings testified that he could smell the odor of alcohol emanating from defendant.[4] Sgt. Hastings then asked defendant if there were any guns in the vehicle, to which defendant replied, “Man, why you got to be like that?” Sgt. ^Hastings then asked him the same thing again, and defendant gave the same response.[5] At this point, *19 Sgt. Hastings asked defendant to exit the vehicle. Several requests had to be made before defendant complied.
Defendant stood at the rear of his vehicle, holding on to it to maintain his balance.[6] He explained to Sgt. Hastings that he was firing warning shots to scare off people who were hunting on his property. While defendant offered this explanation, Sgt. Hastings observed that he had bloodshot eyes and slurred speech.[7] At this point, the agent asked defendant to submit to an HGN (horizontal gaze nystagmus) test, which defendant refused to do. After several requests and refusals, defendant told the agent that he had a problem with his knees. Sgt. Hastings replied that he did not ask him if he had a problem with his knees, rather, he wanted to check his eyes. The agent showed defendant a pen he wanted him to follow with his eyes. Defendant stated that he could not follow a light at the time. The agent replied that it was not dark and that he did not ask him to follow a light. Defendant was then placed under arrest for suspicion of DWI. Sgt. Hastings photographed the trash that defendant had discarded from his truck: an empty Coors Light can, which appeared to still be sweating with condensation, and a Pilot plastic bag.

LAW AND DISCUSSION

In his first assignment of error[8], defendant argues that the evidence was insufficient to find defendant guilty of driving while intoxicated beyond a treasonable doubt. Specifically, defendant contends that the evidence did not establish that he was intoxicated.[9] The State responds that despite the lack of scientific tests indicating intoxication, the observations made by the arresting officer were sufficient to support a finding of driving while intoxicated.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)). Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that *20 the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
In the instant case, defendant was convicted of a fourth offense of operating a vehicle while intoxicated in violation of LSA-R.S. 14:98. At the time of the offense, that statute provided, in pertinent part:
| (A- (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator’s blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
In order to convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Cowden, 04-707, p. 8 (La. App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2 (citing State v. Bourgeois, 00-1585 (La. App. 5 Cir. 3/14/01), 785 So.2d 848, 853). To convict a defendant of a fourth offense of driving while intoxicated, the State must also show that the defendant had three other valid convictions. LSA-R.S. 14:98(E). In the present case, there was no dispute that defendant was operating a vehicle or that he had three prior DWI convictions.[10] Thus, the State needed only to prove that defendant was under the influence of alcohol.
The Louisiana Supreme Court has defined intoxication as the impairment, however slight, to the ability of a person to operate an automobile. State v. Hightower, 238 La. 876, 116 So.2d 699, 703 (1959). The court further explained that the impairment need not be complete but only to the degree that the influence causes a person to operate his car in a manner different from that in which it would be operated by an ordinarily cautious and prudent person. Id.
The jurisprudence has established that intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify, and some behavioral signs, independent of any scientific test, are sufficient |7to support a charge of driving while intoxicated. Cowden, 04-707 at 8, 889 So.2d at 1082, (citing Bourgeois, 00-1585, 785 So.2d at 853). The behavioral manifestations which are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Id.
In State v. Landry, 463 So.2d 761, 767 (La.App. 5 Cir.1985), writ denied, 464 So.2d 1373 (La.1985), this Court found that the evidence was sufficient to support the defendant’s conviction for driving while intoxicated, despite his refusal to submit to a field sobriety test. In that case, the arresting officer pulled the defendant over after he observed him swerving between lanes. Id., 463 So.2d at 766. During the traffic stop, the defendant admitted that he had been drinking, and the officer observed the defendant staggering, leaning on his car for support, slurring his speech, and had the odor of alcohol about him. *21 Id., 46 So.2d at 767. This Court concluded:
While the [officer’s] observations were not made during the course of a “subjective” field sobriety test, the same physical traits would have manifested themselves had the defendant attempted to perform the test. It is implausible to hold that, because the defendant refused to submit to a field sobriety test, his exhibition of the same physical traits which the field sobriety test was designed to uncover were insufficient to support a driving while intoxicated conviction.

Id.

Similarly, in State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 403, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396, this Court found that the evidence was sufficient to support the defendant’s conviction for driving while intoxicated, despite his refusal to submit to a field sobriety test. The defendant was pulled over for speeding; and during the stop, the officer observed that the defendant stumbled, grabbed the side of his car to maintain his balance, and then staggered toward the officer’s car. Id., 02-363, 833 So.2d at 400. The officer also noticed the defendant’s speech was slurred and detected a “strong smell” of | ^alcohol on the defendant’s breath and person. Id. Further, the defendant admitted that he had consumed two glasses of wine with lunch. Id. Additionally, the defendant’s friend, and passenger in the vehicle at the time of the stop, testified that he observed the defendant consume one or two glasses of wine with lunch, but none after lunch. Id,., 02-363, 833 So.2d at 401.
In the present case, the trial judge articulated the reasons for his conclusion that the State had carried its burden of proving that defendant was intoxicated. The key facts the judge relied on were:
Mr. Delaneuville had bloodshot eyes, slurred speech, was leaning on his car once he exited the vehicle, and had an odor of alcohol. Not only did Mr. Dela-neuville exhibit these visible signs of intoxication, but he was not able to comprehend and answer simple questions and instructions from Sgt. Hastings.... The defendant did not present any evidence suggesting Mr. Delaneuville was mentally limited such that he could not intelligently answer or comprehend Sgt. Hastings’ questions.
The record supports the trial court’s conclusions that Sgt. Hastings observed that defendant had bloodshot eyes, slurred speech, an odor of alcohol, and rested on his vehicle to maintain his balance. Also, defendant’s answers were repetitive and nonresponsive to the officer’s questions such that the officer needed to repeat his questions and directions several times. Furthermore, defendant was observed disposing of an empty alcoholic beverage container from his vehicle.
Defendant did not submit to field sobriety, breath, or blood tests; therefore, his conviction rests solely upon Sgt. Hastings’ observations. It is well settled that the observations of the arresting officer may be sufficient to establish the defendant’s guilt and that intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify. State v. Cowden, 04-707, p. 8 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2 (citations omitted). The trial judge, as the trier of |nfact, witnessed Sgt. Hastings’ testimony and was able to assess his credibility. Since it is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence, we determine that any rational trier of fact would have found beyond a reasonable doubt that defendant was driving *22 while intoxicated. As such, we find the evidence presented is sufficient to support defendant’s conviction.
In his second assignment of error, defendant re-urges a two-fold argument that he previously raised in his motion for a new trial. First, he argues that the trial court erred by considering his silence in response to the questions posed by Sgt. Hastings during the traffic stop. Specifically, defendant alleges that his nonre-sponsive answers to Sgt. Hastings’ questions and instructions constituted silence and that the trial judge’s consideration thereof was a violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[11] Secondly, defendant argues that the trial judge impermissibly considered defendant’s failure to testify at trial when he stated in his order of judgment that “defendant did not present any evidence suggesting that [he] was mentally limited such that he could not intelligently answer or comprehend Sgt. Hastings’ questions.”
In response to the first part of defendant’s argument, the State contends that defendant was not silent, but, in fact, was quite vocal in response to the officer’s questions. The State points out that defendant never invoked his right to remain silent, nor did he choose to stay silent. As its response to the second part of | indefendant’s argument, the State incorporates a portion of the trial court’s judgment denying defendant’s motion for new trial. In that denial, the trial judge stated:
This court recognizes that we may have included improper language that states that the defendant did not put on evidence in support of his claim. This court did not in any way place the burden on the defendant at any time in this matter. Though we may have erroneously included such language, this court stresses that we did not expect the defendant to put on any evidence. The state left no doubt in this court’s mind as to the accuracy and truthfulness of the factors and observations which contributed to our decision to find Mr. Dela-neuville guilty of driving while intoxicated. In our decision, we believed the totality of the State’s evidence against Mr. Delaneuville which included: odor of alcohol on his breath, bloodshot eyes, slurred speech, leaning on his vehicle, and answering the questions presented to him with unusual statements that did not address the question posed to him. At no time, in the transcripts from which we obtained this evidence, or during the trial, did we have any doubt as to why Mr. Delaneuville exhibited these outward symptoms and behaviors other than because he was intoxicated. This court believed Sgt. Hastings to be reliable and credible, and we found this evidence to be sufficient to find Mr. Delaneuville guilty of driving while intoxicated. Even if this court included language that suggested that the defendant should put on evidence, this court’s decision relied solely upon the State’s evidence.
In the first part of defendant’s argument, he relies on LSA-C.Cr.P. art. 770(3) and the Doyle v. Ohio jurisprudence. LSA-C.Cr.P. art. 770(3) prohibits references to the failure of a defendant to testi- *23 iy in a jury trial and Doyle prohibits references to a defendant’s post-arrest silence in a jury trial. However, here, in a bench trial, defendant does not contend that impermissible references were made, but that the trial judge impermissibly considered defendant’s post-arrest silence. Thus, under these facts, we find that neither LSA-C.Cr.P. art. 770(3) nor Doyle is applicable to this case.. Nevertheless, they afford an informative framework within which to analyze defendant’s first argument.
LSA-C.Cr.P. art. 770(3) provides that upon the defendant’s motion, a mistrial shall be ordered when a remark or comment, made within the hearing of|nthe jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to the failure of the defendant to testify in his own defense. The Louisiana Supreme Court has held that LSA-C.Cr.P. art. 770 is designed to guard against improprieties in the presence of the jury. State v. Marshall, 359 So.2d 78, 83 (La.1978) (Emphasis supplied); see also State v. Mahogany, 07-360 (La.App. 5 Cir. 10/30/07), 970 So.2d 1150; State v. Anderson, 02-273 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, writ denied, 02-2519 (La.6/27/03), 847 So.2d 1254. Thus, in a bench trial, this article does not mandate a mistrial. Marshall, supra. This is because “[t]he admissibility of evidence in a judge trial is different from the requirements of jury trials.... A judge, unlike a jury, by virtue of the judge’s training and knowledge of the law is fully capable of disregarding any impropriety.” Anderson, 02-273, 824 So.2d at 521 (quoting Jenkins v. Baldwin, 00-0802, p. 8 (La. App. 4 Cir. 8/29/01), 801 So.2d 485, 492). Similarly, in the instant ease, the judge, by virtue of his training and knowledge of the law, is aware that defendant’s post-arrest silence cannot contribute to his decision.
Secondly, this Court has held that a reference to a defendant’s post-arrest silence in violation of Doyle is subject to a harmless error analysis. State v. Longo, 08-405, p. 12 (La.App. 5 Cir. 1/27/09), 8 So.3d 666, 673. An error is harmless when the verdict actually rendered was surely unattributable to the error. Id.
Despite that Doyle applies to references to a defendant’s post-arrest silence in the context of jury trials, we find that the harmless error analysis is nevertheless instructive here: if the trial judge’s decision was surely unattributable to his consideration of defendant’s post-arrest silence, then such consideration was a harmless error. Thus, assuming defendant’s nonresponsive answers constituted | ^silence and should not be considered, we find there was sufficient evidence to support defendant’s conviction. Sgt. Hastings observed defendant had bloodshot eyes, smelled of alcohol, rested on his vehicle to maintain his balance, and disposed of an empty alcoholic beverage container from his vehicle.
Lastly, and most notably, Sgt. Hastings’ testimony makes clear that defendant was not silent during his encounter with the officer. In fact, the trial judge took note of this in his denial of defendant’s motion for a new trial, stating:
[Defendant] argues that [he] was prejudiced because he chose to remain silent when being questioned by Sgt. Hastings. The defendant contends that this court determined Mr. Delaneuville to be non-responsive to Sgt. Hastings’ inquiries. The defendant’s counsel believes that Mr. Delaneuville was simply confused. The defendant misinterprets the Court’s reasoning on this point. Our judgment was clear that Mr. Delaneuville continually responded to Sgt. Hastings’ questions. Therefore, the right to remain silent is not an issue.
*24 In this court’s analysis of Mr. Dela-neuville’s answers to Sgt. Hastings, this Court clearly demonstrated how Mr. De-laneuville’s answers did not match the questions posed to him. According to the defendant’s own' Motion for New Trial, this court observed a cue of impairment used by officers to determine whether Mr. Delaneuville was impaired. Under the category of “Personal Contact with the Defendant,” this court observed, among others, cue number 12 entitled “Unusual Statements.” To briefly reiterate our prior judgment, Sgt. Hastings asked Mr. Delaneuville if he knew that he was pulled over for littering. A common sense answer might be, “Yes” or “No.” Mr. Delaneu-ville replied twice that he was not shooting any guns. Then, Sgt. Hastings asked him to submit to an HGN test using a pen, in broad daylight. Such a test requires Mr. Delaneuville to follow the pen with his eyes. Mr. Delaneuville replied first that he had bad knees, and then that he could not follow a light, even though he was presented with a pen. It is clear to this court that Mr. Delaneuville was not confused, nor was he silent. It is clear that his unusual answers reveal that Mr. Delaneuville was intoxicated such that he could not accurately answer Sgt. Hastings’ questions.
In view of the foregoing, we find that the first part of defendant’s argument has no merit.
In regard to the second part, namely, that the trial court impermissibly considered defendant’s failure to testify, this Court has previously recognized that a reference to a defendant’s failure to testify in violation of LSA-C.Cr.P. art. |13770(3) is subject to a harmless error analysis. State v. Shannon, 10-580, pp. 27-28 (La. App. 5 Cir. 2/15/11), 61 So.3d 706, 724, writ denied, 11-0559 (La.9/30/11), 71 So.3d 283 (citations omitted). Thus, unless an appellate court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict, it should not reverse a conviction due to improper remarks during a closing argument. Id., 10-580, 61 So.3d at 724-25.
In Shannon, the defendant was on trial for a third offense of driving while intoxicated and argued that a mistrial should have been declared when the prosecutor emphasized that the evidence was uncon-troverted because it constituted an indirect reference to the defendant’s right to remain silent. Shannon, 10-580 at 23, 61 So.3d at 722. This Court found the prosecutor’s remarks were harmless because ample evidence supported the guilty verdict. Id., 10-580 at 28, 61 So.3d at 725. The arresting officer testified that defendant appeared very unsteady on his feet, smelled of alcohol, and that his eyes were bloodshot. Id. The officer also testified that defendant was uncooperative and his behavior was abnormal. Id. Further, the officer recognized defendant’s conduct as characteristic of alcohol or drug impairment, he observed bottle caps and a six-pack of beer on the floor of defendant’s vehicle, and the jury viewed a corroborating video of defendant’s stop and arrest. Id., 10-580 at 28-29, 61 So.3d at 725.
The present case is distinguishable from Shannon for two reasons: this was a bench trial and the reference to defendant’s failure to present evidence was made in the trial judge’s order of judgment, not by the prosecutor or other court official. Nevertheless, we find that the reasoning articulated in Shannon is applicable here: unless we are thoroughly convinced that defendant’s failure to present evidence contributed to the judge’s decision, the conviction should not be reversed. Here, like in Shannon, there was ample *25 evidence to support defendant’s conviction. Sgt._J_j,,Hastings observed defendant had bloodshot eyes, slurred speech, an odor of alcohol, and rested on his vehicle to maintain his balance. Defendant’s answers were repetitive and nonresponsive to the officer’s questions such that the officer needed to repeat his questions and directions several times. And defendant was observed disposing an empty alcoholic beverage container from his vehicle. Finally, and most importantly, the trial judge even emphasized that his statement that defendant failed to present evidence was not a contributing factor to his decision.
In view of the foregoing, we determine that the second part of defendant’s argument has no merit. Therefore, we find that the trial court did not abuse its discretion in denying defendant’s motion for a new trial[12] and that neither a mistrial nor a new trial was warranted under the circumstances.
In his third assignment of error, defendant re-urges another argument raised in his motion for new trial. He argues that the trial court erred by considering facts not admitted into evidence. Specifically, defendant contends that the court imper-missibly considered defendant’s speech and intellect in a sober state as compared with his speech and intellect while under the influence of alcohol. In support of this contention, defendant points to the trial court’s statement in its order of judgment that “the court has observed Mr. Delaneu-ville in court and has never found Mr. Delaneuville’s speech to be naturally slurred or his intellect to be limited.” Defendant asserts that such an observation was impermissible because defendant did not testify, nor was testimony concerning his typical speech and intellect introduced into evidence.
|1fiIn its response, the State incorporates the trial court’s denial of defendant’s motion for new trial as support for its position. The trial court stated:
[T]he defendant points out that the Court’s observation that Mr. Delaneu-ville’s speech is not slurred nor his intellect limited is an improper observation by the court and cannot be used in this court’s judgment. Without discussing whether the observations were or were not improper, the court merely made such observations which had no bearing on this court’s decision. This court, as stated in our judgment, accepts Sgt. Hastings’ report that Mr. Delaneuville’s speech was slurred, which was a contributing factor in our conclusion that Mr. Delaneuville was intoxicated. Such a fact was never challenged, nor is the defendant required to challenge such an allegation. Because of the testimony by the State, and taking into consideration the totality of the other factors that point to intoxication, this Court believes beyond a reasonable doubt that Mr. De-laneuville’s speech was slurred because he was under the influence of alcohol.
In another DWI case out of this Court, the defendant asserted that the trial court erred in considering facts not admitted in evidence when it extrapolated the defendant’s blood alcohol level at the time of the present offense by relying on the defendant’s blood alcohol level in a prior driving while intoxicated conviction. State v. Simard, 01-1373 (La.App. 5 Cir. 4/30/02), 817 So.2d 366, 370. This Court found that because the record did not contain any expert opinion relating to defendant’s blood alcohol level at the time of the pres *26 ent offense, there was no evidence that supports the trial court’s extrapolation of defendant’s blood alcohol level. Id., 01-1378, 817 So.2d at 371. Nevertheless, this Court concluded that the error was harmless. Id. The court’s reasoning is as follows:
The State is not required to prove a defendant had a blood alcohol level of .10% or more in order to convict him of driving while intoxicated. Rather, the State need only prove a defendant was intoxicated. A blood alcohol level of .10% merely entitles the State to a presumption of intoxication, but it is not the only proof of intoxication.... [I]ntoxi-cation with its attendant behavioral manifestations is an observable condition about which a witness may testify.... [TJhere is sufficient evidence in the record to support a finding that defendant was intoxicated based on the physical traits observed by the police officer at the time of the stop. Thus, the trial court’s determination of defendant’s blood alcohol level, while clearly improper, was irrelevant.
1 KJd. (citation omitted).
Similarly, in the instant case, even assuming that the trial court considered facts not admitted in evidence when it noted defendant’s normal speech and intellect, we find that there was nonetheless sufficient evidence in the record to support a finding that defendant was intoxicated. Excluding the evidence regarding defendant’s speech and intellect, other facts indicative of intoxication were the odor of alcohol on defendant’s breath, bloodshot eyes, leaning on his vehicle for balance, and the disposed alcoholic beverage container. Additionally, in his denial of defendant’s motion for new trial, the trial judge even explicitly stated that his observations regarding defendant’s normal speech and intellect had no bearing on his decision. In light of the foregoing and this Court’s holding in Simará, we determine that the trial court’s consideration of facts not admitted in evidence, while perhaps improper, was harmless.
In his fourth assignment of error, defendant argues that the trial court erred by not granting him a contradictory hearing on his motion for new trial. He cites to LSA-C.Cr.P. art. 852[13] and claims that if he had been provided a hearing, he would have presented evidence to establish that he would have proceeded differently at trial had he known that facts not in evidence would be considered and that his silence at trial would be held against him. Defendant further asserts that the cases upon which the trial judge relied to support his decision to not hold a contradictory hearing should be overturned. In response, the State refers to the jurisprudence cited by the trial judge and submits that this assignment of error is without merit.
In State v. Davis, 00-278 (La.App. 5 Cir. 8/29/00), 768 So.2d 201, 208, writ [17denied, 00-2730 (La.8/31/01), 795 So.2d 1205, the case cited by the trial judge, this Court noted that “historically the method of hearing motions for new trial has been left to the trial judge’s discretion.” (quoting State v. Jackson, 570 So.2d 227, 231 (La.App. 5 Cir.1990)). The Davis court also quoted a Louisiana Supreme Court ruling on the issue:
The method of hearing motions for new trial is left to the discretion of the judge. If the reading of the motion imparts to him sufficient knowledge to enable him *27 to intelligently dispose of the matter, he cannot be arbitrarily required to delay his ruling for the purpose of further hearing or argument. The accused is not entitled to compulsory process to obtain witnesses in support of his motion for a new trial, and the examination of witnesses to prove newly-discovered evidence is within the discretion of the trial judge.
Id. (quoting State v. Varnado, 154 La. 575, 97 So. 865, 868 (1928)). Additionally, the court noted that in State v. Barfield, 292 So.2d 580 (La.1974), the Louisiana Supreme Court found no error when the trial court disposed of a motion for new trial on the basis of affidavits submitted with the motion. The supreme court observed that “[a]n evidentiary hearing was not necessary and would have been merely repetitious because of the affidavit.” Barfield, 292 So.2d at 582.
In the instant ease, the trial court considered a memorandum and a supplemental memorandum in support of defendant’s motion for new trial, as well as the State’s opposition to the motion for new trial. Indeed, in its denial of defendant’s motion for new trial, the court even stated:
In this case, the court has read several lengthy motions that present all of defendant’s arguments in favor of granting a new trial. This court feels that we have a complete understanding of the arguments that will be heard at a contradictory hearing, and find that no such hearing is necessary in order to make a ruling on the Motion for New Trial.
Consequently, we find that the trial judge was sufficiently well-versed on the issues and that a hearing was unnecessary, Thus, we determine that defendant has 11snot shown that the trial court abused its discretion in declining to hold a hearing on defendant’s motion for new trial.
In his fifth assignment of error, defendant argues that the State failed to prove that two of defendant’s former DWI offenses occurred within the ten-year cleansing period.[14] He contends that the stipulation by the State and defense that defendant has three prior DWI convictions established only the conviction dates, not the commission dates of the offenses. Defendant further argues that because the two prior convictions were misdemeanors, the rules governing the institution of prosecution of misdemeanors require institution of prosecution within two years of the offense,[15] and the case must be tried within one year of the institution of prosecution,[16] these offenses could have occurred as early as three years prior to the conviction dates, or, on December 6 and 13, 1996. In light of this and because the State did not establish the commission dates of these two offenses, defendant contends that he was improperly adjudicated a fourth DWI offender.
The State responds by citing State v. Ostrom, 43,166 (La.App. 2 Cir. 4/9/08), 980 So.2d 890, writ denied, 08-1005 (La.12/19/08), 996 So.2d 1131, in which that court held:
Since the predicate offense is not a “material ingredient” or element of the criminal DWI conduct upon which the ac *28 ■cused’s present arrest and prosecution are based, the state should not be required to prove the commission dates of the predicate offenses when the proven conviction dates for those crimes are well within the applicable ten-year period.
Ostrom, 43,166 at 14-15, 980 So.2d at 898.[17]
|19See also, State v. Chapman, 625 So.2d 1351 (La.App. 3 Cir.1993), writ denied, 634 So.2d 402 (La.1994) (where the court held that the omission of the dates on which prior DWI offenses occurred is of no consequence to the validity of an indictment that charged a third offense DWI and specified only the dates of prior convictions).
In the instant case, the conviction dates for the offenses at issue are December 6 and 13, 1999. Since the present offense was committed on December 27, 2007, LSA-R.S. 14:98(F)(2) mandates that DWI offenses committed prior to December 27, 1997 are not to be considered for enhancement of the present offense. However, the commission dates of the pri- or offenses were not determined at trial. Nonetheless, following Chapman and Os-trom, because the conviction dates are well within the ten-year period, the State was not required to prove the commission dates of the prior offenses. This assignment of error has no merit.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record shows that defendant’s sentence is illegally lenient for two reasons. One, the record does not reflect that the trial court ordered defendant’s vehicle to be seized, impounded, and sold at auction as required by LSA-R.S. 14:98(E)(2)(a).[18] Although there are exemptions from seizure, the vehicle here does not fit within the prescribed conditions for exemption as provided in LSA-|R.S.2q 14:98(E)(2)(b) and (c).[19] Similarly, in State v. Simms, 03-1459 (La.App. 5 Cir. 12/28/04), 892 So.2d 111, 123, this Court found the defendant’s sentence was illegal because.the sentencing judge allowed the defendant to keep his vehicle, upon the condition that he pay his fine and fees. This Court determined that this was a ground for remand to determine whether the defendant’s vehicle should be seized and sold. Id.
*29 Secondly, the record does not reflect that the trial court imposed all of the conditions of home incarceration as required by LSA-R.S. 14:98(E)(3). At the time of the offense, LSA-R.S. 14:98(E)(3) provided:
(a) An offender sentenced to home incarceration during probation shall be subject to special conditions to be determined by the court, which shall include but not be limited to the following:
(i) Electronic monitoring.
(ii) Curfew restrictions.
(iii) Home visitation at least once per month by the Department of Public Safety and Corrections for the first six months. After the first six months, the level of supervision will be determined by the department based upon a risk assessment instrument.
(b) The court shall also require the offender to obtain employment and to participate in a court-approved driver improvement program at his expense. The activities of the offender outside of his home shall be limited to traveling to and from work, church services, Alcoholics Anonymous meetings, or a court-approved driver improvement program.
(c) Offenders sentenced to home incarceration required under the provisions of this Section shall be subject to all other applicable provisions of Code of Criminal Procedure Article 894.2.[20]
|21,In State v. Simms, supra, 892 So.2d at 122-23, this Court found the following statements by the sentencing judge regarding home incarceration did not comply with LSA-R.S. 14:98(D)(3)[21]: “And home incarceration, let me explain for your information, that means that activities outside of your home shall be limited to traveling to and from work, church services, substance abuse meetings and counseling, and/or court approved driver improvement program, which Pm also ordering driver improvement program also.” The Simms court also noted that the defendant was not given a certificate of conditions of home incarceration, as required by LSA-C.Cr.P. art. 894.2(D). The Court concluded that because the trial court failed to impose all of the required conditions of home incarceration, the sentence was illegally lenient.
In the instant case, the trial judge made the following statements regarding defendant’s home incarceration: “We impose the one year home incarceration. The terms of it will include curfew restrictions and other issues and concerns that the probation officer may have.” The judge subsequently stated, “I am going to admit Mr. Delaneuville to approach trial bail. In other words, an appellate bail, and impose conditions of house arrest, and no driving during that period, as a balancing of the various concerns, obligations, and rights here.” (Emphasis supplied). The judge also stated, “Typically, I let him go to a job, his attorney, a doctor, and a church.”
In addition to these vague conditions, a review of the record reveals that the trial judge failed to make any mention of electronic monitoring, home visitation, employment, or a driver improvement program as required by LSA-R.S |22 14:98(E)(3)(a) and *30 (b). Also, the record does not reflect that the defendant was given a certifícate of conditions of home incarceration, as required by LSA-R.S. 14:98(E)(3)(c) and LSA-C.Cr.P. art. 894.2(D).
In light of this Court’s holding in Simms, the vague conditions and apparent deficiencies regarding the imposition of defendant’s home incarceration, and the failure of the trial court to order defendant’s vehicle seized, impounded, and sold at auction, we find that defendant’s sentence is likewise illegally lenient. Therefore, as this Court did in Simms, we vacate the sentence and remand the matter for resen-tencing for clarification and compliance with LSA-R.S. 14:98(E). Simms, 03-1459, 892 So.2d at 124.

DECREE

Accordingly, for the reasons assigned herein, defendant’s conviction is hereby affirmed. The sentence is vacated and the matter is remanded for resentencing in accordance with this opinion.

CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING

. Defendant's surname is spelled differently throughout the record. For the sake of consistency, it will be spelled Delaneuville herein.

. Defendant and the State stipulated that at trial the State would introduce the testimony of Agents Aron Hastings and Lester Rulf by introducing the transcript of their testimony given at the Motion to Suppress hearing held on October 21, 2009. These facts are derived therefrom.

. The 11-year-old boy was later identified as Justin Delaneuville.

. In his incident report, Sgt. Hastings indicated that the odor of an alcoholic beverage was "strong” and that defendant’s level of impairment was "obvious.”

. In his incident report, Sgt. Hastings indicated that a pistol and a shotgun were recovered from the vehicle and that both weapons had been fired recently.

. In his incident report, Sgt. Hastings noted “Subject held on to his vehicle numerous times for balance while talking.”

. In his incident report, Sgt. Hastings indicated that defendant's speech was "slurred.” Also contained in the report was the agent’s observation that "Agent could detect bloodshot eyes and slow movements by the subject’s head and eyes.”

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id.

.In his brief, defendant relies on the National Highway Traffic Safety Administration’s guideline for identifying signs of driving while intoxicated. However this Court has found the Louisiana Department of Public Safety and Transportation’s training manual for in-toxilyzer testing as well as the U.S. Department of Transportation and Safety's standards for DWI investigations to be irrelevant. State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 406, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.

. The defense and State stipulated at trial to defendant’s three prior DWI convictions. However, in this appeal, defendant argues that two of his three prior DWI convictions were ineligible to be used in adjudicating him a fourth DWI offender.

. Doyle v. Ohio precludes the State from impeaching a defendant’s testimony at trial with evidence that he remained silent immediately after his arrest and after receiving the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Richards, 99-67 (La.9/17/99), 750 So.2d 940, 940. The Louisiana Supreme Court found that Doyle rests on the premise that Miranda warnings render the subsequent silence of a defendant "insolubly ambiguous,” and thereby make later use of that silence to impeach his or her exculpatory testimony at trial fundamentally unfair. Id.

. The trial court's ruling on a motion for a new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Bazley, 09-358, p. 17 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039.

. LSA-C.Cr.P. art. 852 provides: "A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney.”

.At the time of the offense, LSA-R.S. 14:98(F)(2) provided in pertinent part:
For purposes of this Section, a prior conviction shall not include a conviction for an offense under this Section ... if committed more than ten years prior to the commission of the crime for which the defendant is being tried and such conviction shall not be considered in the assessment of penalties hereunder.

. See LSA-C.Cr.P. art. 572(A)(3).

. See LSA-C.Cr.P. art. 578(A)(3).

. It is worth noting that, like the instant case, in Ostrom, the State and defense also entered into a stipulation concerning the existence of three prior convictions. Ostrom, 43,-166 at 3, 980 So.2d at 892.

. At the time of the offense, LSA-R.S. 14:98(E)(2)(a) provided:
In addition, the court shall order that the vehicle being driven by the offender at the time of the offense be seized and impounded, and be sold at auction in the same manner and under the same conditions as executions of writ of seizure and sale as provided in Book V, Title II, Chapter 4 of the Code of Civil Procedure.

.At the time of the offense, LSA-R.S. 14:98(E)(2)(b) provided:
The vehicle shall be exempt from sale if it was stolen, or if the driver of the vehicle at the time of the violation was not the owner and the owner did not know that the driver was operating the vehicle while intoxicated. If this exemption is applicable, the vehicle shall not be released from impoundment until such time as towing and storage fees have been paid.
LSA-R.S. 14:98(E)(2)(c) provided: "In addition, the vehicle shall be exempt from sale if all towing and storage fees are paid by a valid lienholder.”

. At the time of the offense, LSA-C.Cr.P. art. 894.2(D) provided: “The defendant shall be given a certificate setting forth the conditions of his home incarceration and shall be required to agree in writing to the conditions.”

. It is noted that Subsection D was at issue in Simms, as opposed to Subsection E like in the present case, because the defendant in Simms was convicted of a third offense of driving while intoxicated. Despite this difference, the provisions governing home incarceration for a third offender are the same as those for a fourth offender.