JUDE G. GRAVOIS, Judge.
^Defendant, Eric Charles Davis, has appealed his conviction of operating a motor vehicle while intoxicated (DWI), fourth or subsequent offense, in violation of La. R.S. 14:98(A)(E). For the reasons that follow, we affirm.

FACTS

At defendant’s bench trial on the subject charge, Roy Moore testified that on October 25, 2010 at approximately 5:00 p.m., he was driving towards Kenner (or westbound) in the far left of the left lane of West Napoleon Avenue in Metairie, Louisiana, being the last car in a line of stacked up traffic, when a dark Nissan pickup truck in the right lane moved over to the left lane behind his vehicle. There was an SUV next to him in the far right of the right lane. The pickup truck was heading right for him; he was expecting a rear-end collision. The pickup truck suddenly shifted to the right and went between his vehicle (a Ford Explorer) and the SUV to his right, sideswiping his vehicle in the pro *1197 cess. The pickup truck then collided with the rear of a Toyota RAV4 SUV that was located directly in front of his Explorer, causing the hood of the pickup truck to pop up. The driver of the Rpickup truck, later identified as defendant, got out of his truck and “slammed” his hood down. At that time, the windshield wipers on defendant’s truck were on. Defendant removed the driver’s side windshield wiper from his truck and threw it into the grass on the north side of West Napoleon. By this time, traffic on West Napoleon in front of the accident scene had moved ahead. Then, after instructing everyone who had gathered at the scene to get out of his way, defendant got back into his truck, drove around the RAV4, struck the left guardrail along the street, and entered a U-turn lane up ahead on West Napoleon. Defendant’s truck started smoking as it entered the U-turn lane. Defendant then completed the U-turn and proceeded in the opposite direction on West Napoleon.
Martha Meyers testified that on October 25, 2010 at approximately 5:00 p.m., while she was sitting in traffic at a stop light at West Napoleon Avenue and Clearview Boulevard, her vehicle (a Toyota RAV4 SUV) was struck from behind “with a big thud or jolt” by a black truck, whose hood was raised up. As the truck pulled around her vehicle, she wrote its license plate number down. The truck went a little farther down, made a U-turn, and started heading in the opposite direction. She saw heavy smoke coming from the pickup truck as it made the U-turn. The driver of the pickup truck failed to stop and determine whether or not she had been injured in this accident. According to Ms. Meyers, “he just took off.”
Detective Steven Brens of the Jefferson Parish Sheriffs Office testified that on October 25, 2010 at approximately 5:15 p.m., he was dispatched to a hit-and-run motor vehicle accident in the 4400 block of West Napoleon Avenue. When he arrived at the scene a few minutes later, Detective Brens observed two damaged vehicles in the left lane of West Napoleon, a Ford Explorer and a Toyota RAV4 SUV: the Explorer had been struck in the right rear bumper area; the RAV4 had been struck in the rear.
14Petective Brens interviewed Mr. Moore, the owner of the Explorer, Ms. Meyers, the owner of the RAV4, and another witness. As a result of his investigation, Detective Brens concluded that the subject pickup truck struck the right rear bumper of the Explorer as it was passing between the Explorer and another vehicle to its right, straddling the center line of West Napoleon in the process. The pickup truck then entered the left lane of West Napoleon and struck the rear of the RAV4, causing the truck’s hood to rise up. The driver of the pickup truck then backed up, drove around the RAV4, reentered the left lane of West Napoleon, made a U-turn on West Napoleon, and proceeded eastbound on West Napoleon. Detective Brens never came into contact with defendant.
Deputy Brent Remondet of the Jefferson Parish Sheriffs Office testified that on October 25, 2010, he was driving eastbound on West Napoleon Avenue in his police unit when he observed a black pickup truck emitting smoke with its hood raised up against the top of the truck. The truck was proceeding slowly eastbound on West Napoleon. Deputy Re-mondet activated his lights, approached the truck, and identified himself as a Jefferson Parish Sheriffs deputy. He notified dispatch to send an officer to his location.[1]
*1198 Deputy Remondet testified that upon making contact with defendant, the driver of the truck, he noticed that defendant “appeared to be really sluggish inside the vehicle.” He asked defendant to step out of his vehicle and have a seat along the curb of West Napoleon. He noticed that defendant’s eyes “were really bloodshot” and his words “were really slurred.” He could not recall much about defendant’s balance. Defendant did not complain to him of any injuries. When another deputy, Anthony Cannatella, arrived to assist, Deputy Remondet advised him that defendant appeared to have been “driving under the influence.”
| ¡¿Deputy Cannatella, who was accepted by the court as an expert in the administration of standard field sobriety testing, testified that he heard Deputy Remondet radio headquarters that he had a “signal 98,” which is police jargon for a person suspected of driving under the influence. When he arrived at the scene, Deputy Cannatella observed a black Nissan Frontier pickup truck with its left front tire deflated and smoking. The truck’s hood was flat up against its windshield. Based on his investigation, Deputy Cannatella concluded that defendant’s vehicle was the same vehicle that had earlier been involved in the nearby hit-and-run accident on West Napoleon. Defendant complained of neck, back, and stomach injuries, which defendant stated he received because “an old lady ran him off the road.”
Due to his slurred speech, Deputy Can-natella questioned defendant regarding any medical problems that he may have been experiencing at that time. Defendant denied having any medical problems. When asked if he was taking any medications, defendant responded that he had ingested one or two Alprazolam[2] pills that day. Deputy Cannatella testified that he did not smell anything on defendant’s breath, but that defendant had slurred speech and stumbled as he walked. He stated that defendant “actually stumbled so bad that he almost went into the right lane of — eastbound West Napoleon was still open to traffic.” He had to grab defendant by the back of his shirt and “pulled him back to stop him from getting smacked by a car.” The standard field sobriety test was not administered to defendant on the scene because he claimed he was injured. Defendant was then transported by ambulance to East Jefferson General Hospital. After a tow track removed defendant’s disabled vehicle, Deputy Cannatella traveled to the hospital.
|f,Because he knew that he was dealing with an impaired driver, Deputy Cannatel-la brought with him to the hospital the required DWI rights forms. Defendant signed the forms but refused to consent to having his blood drawn for a chemical blood test. Deputy Cannatella had difficulty speaking with defendant because he appeared to be falling asleep. As part of the standard field sobriety test, Deputy Cannatella attempted to perform a “horizontal gaze nystagmus test” on defendant; this proved unsuccessful because defendant repeatedly closed his eyes. He did not know if defendant was actually physically falling asleep or if he was just being uncooperative in closing his eyes. While being interviewed by Deputy Cannatella, defendant did not admit that he had taken any medications. In light of defendant’s disposition and demeanor, Deputy Canna-tella stated that he found it “unusual” that defendant requested sedatives from the doctor in the emergency room.
*1199 Deputy Cannatella testified that defendant was in possession of a prescription bottle for Alprazolam. It was a legal prescription made out to him. The prescription had been filled earlier that day. The prescription bottle indicated that a quantity of 40 pills had been dispensed; however, Deputy Cannatella was able to clearly see that the bottle contained less than 40 pills. After the pills were poured out of the bottle and counted, Deputy Cannatella determined that only 21 pills remained in the bottle.[3] When he was questioned by Deputy Cannatella regarding in the quantity of pills remaining in the bottle (as compared to the number of pills that had been filled earlier that day), defendant stated that he thought that he might have spilled some pills inside of his vehicle. However, Deputy Cannatella testified that he did not notice any loose pills on the inside of | defendant’s truck when he had earlier retrieved defendant’s registration and insurance documents out of the truck’s glove compartment.
Deputy Cannatella testified that he believed he had sufficient probable cause to arrest defendant for DWI and reckless operation of a motor vehicle based on defendant’s actions in operating his vehicle with its hood up against the windshield and with only three inflated tires. Deputy Cannatella testified that he cited defendant for operating a motor vehicle while intoxicated in violation of La. R.S. 14:98.[4] Deputy Cannatella testified that defendant became belligerent, and strangely, asked to instead be arrested for “reckless impaired driving.”
Antoinette Valenti, an emergency medical technician at East Jefferson General Hospital, testified that on October 25, 2010, she responded to a call for an ambulance to defendant’s location on West Napoleon Avenue. Upon her arrival at 5:19 p.m., defendant stated to her that he was in pain and that “these people had ran [sic] him off the side of the road.” Ms. Valenti did not notice any smells emanating from defendant. He denied that “he had taken anything, drank any alcohol, or anything like that.” She noticed that defendant’s speech was “very slurred” and that “he wasn’t that oriented.” Defendant was placed on a stretcher and put into the back of the ambulance. When asked again if he was sure he had not taken anything, defendant stated that he had taken some Al-prazolam two hours before the accident. When asked why she insisted on asking defendant that question again, she replied: “Because a person doesn’t act like that if they’re not under some kind of influence. I mean his speech was slurred. He just— he wasn’t that oriented.” While being transported in the ambulance to the hospital, defendant |sbecame “really antsy and agitated and tried to get off the stretcher.” She tightened his straps up a little bit and then loosened them once he finally calmed down.
On cross-examination, Ms. Valenti testified that she included information regarding the Glasgow Coma Scale[5] in her report and that defendant scored the highest on alertness, verbal, and ability to follow commands. She agreed that achieving the “highest” score meant that defendant *1200 could understand his speech, was alert, and was conscious. She explained however, that the Glasgow Coma Scale is not used to determine whether someone is on prescription medication. She ranked defendant highest on alertness because he was talking to her. She did not mark defendant as disoriented because he was able to have a conversation with her without speaking nonsense.
Dr. Granville Morse, III, who was accepted by the court as an expert in emergency medicine, treated defendant at East Jefferson General Hospital on the day of his accident. He stated that defendant was alert, had slightly slurred speech, and a smell of alcohol. He complained of pains in his head, neck, abdomen, and back areas. According to Dr. Morse, defendant’s injuries, which included soft tissue injuries and a laceration under his eye, were insignificant.
Defendant volunteered to Dr. Morse that he had “ingested a significant amount of his [Alprazolam] today as well.” Dr. Morse ordered laboratory tests on blood and urine samples taken from defendant. Dr. Morse diagnosed defendant with “acute benzodiazepine intoxication”[6] and neck strain. Defendant asked for a sedative at the end of his visit. Dr. Morse denied this request because in his opinion, defendant “had had plenty [of sedatives] at that point.” Upon discharge, defendant received a handout on benzodiazepine abuse.
|nOn cross-examination, Dr. Morse admitted that the discharge instructions given to defendant upon his discharge from the hospital stated that Alprazolam should not be taken more often than one pill every six hours, and no more than four times a day, and that defendant’s prescription bottle stated for him to take one tablet twice a day. Benzodiazepine was detected on defendant’s urine screen. Dr. Morse admitted that the trauma that defendant sustained could have caused slurred speech. On redirect examination, Dr. Morse testified that he made his diagnosis of acute benzodiazepine intoxication based on his physical examination of defendant, the laboratory test results, and defendant’s statement that he had ingested a significant amount of Alprazolam that day. Dr. Morse also stated that ingesting several Alprazolam also could cause slurred speech.
Sally Ann Malone, an emergency room nurse at East Jefferson General Hospital, also treated defendant on October 25, 2010. She observed that defendant was “very lethargic,” “sort of slumped over,” and “drowsy but arousable.” She was unable to recall any smell emanating from defendant. She recalled defendant’s speech as being slurred, and that he stated to her that he had ingested three Alprazo-lam earlier in the day. She collected blood and urine samples from defendant.
At the conclusion of the trial, the trial judge found defendant guilty as charged.

ASSIGNMENT OF ERROR— Sufficiency of the evidence

In his sole assignment of error, defendant argues that this case rested on the testimony of only one witness, Dr. Gran-ville Morse, whose testimony failed to prove defendant’s guilt beyond a reasonable doubt. Defendant asserts that Dr. Morse’s medical diagnosis that defendant suffered from acute benzodiazepine intoxication was not substantiated by reliable evidence and lacked a proper | inevidentiary foundation because defendant’s lab results were not admitted into evidence.
*1201 The State responds that it presented sufficient evidence to prove that defendant was operating a motor vehicle while under the influence of Alprazolam, a Schedule IV controlled dangerous substance as defined by La. R.S. 40:964. The State argues that several witnesses testified at trial that defendant admitted that he had ingested Al-prazolam on the date of the accident. The State asserts that these witnesses testified regarding defendant’s behavioral manifestations that showed impairment, including slurred speech, staggering, striking two vehicles (one with enough force to push the hood of defendant’s truck up), attempting to flee the scene with a flat tire and with smoke emitting from his vehicle, and the behavior of repeatedly closing his eyes while Deputy Cannatella attempted to conduct a field sobriety test.
In response, defendant argues that his behavioral manifestations were consistent with the behavior of a person who was involved in a car accident and complained of head and neck injuries. He contends that his trouble speaking and finding a sense of balance were reasonable behavior after this accident. Defendant argues that his difficulty walking and slurred speech resulted from the accident and do not prove that he was driving while intoxicated.

ANALYSIS

In reviewing sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Delanueville, 11-379 (La.App. 5 Cir. 2/14/12), 90 So.3d 15, 19, writ denied, 12-0630 (La.9/21/12), 98 So.3d 325. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Delanueville, 90 So.3d at 19-20. Rather, the reviewing court is required to consider the whole record and to determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
In the present case, defendant was convicted of operating a motor vehicle while intoxicated in violation of La. R.S. 14:98(A)(E) after having previously been convicted five times of operating a motor vehicle while intoxicated.[7] At the time of the offense, La. R.S. 14:98(A) provided, in pertinent part:
(1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
* * * *
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964;
La. R.S. 40:964 lists “Alprazolam” as a Schedule IV controlled dangerous substance.
The Louisiana Supreme Court has defined intoxication as the impairment, however slight, to the ability of a person to operate an automobile. Delanueville, 90 So.3d at 20 (citing State v. Hightower, 238 La. 876, 116 So.2d 699, 703 (1959)). The impairment need not be whole, but only to the extent that the influence caused a per *1202 son to operate his vehicle in a way different from that in which it would be operated by an ordinarily cautious and prudent person. Id.
The jurisprudence has established that intoxication with its attendant behavioral manifestations is an observable condition about which a witness may 112testiiy, and some behavioral signs, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. Id. (citing State v. Cowden, 04-707 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2 (citations omitted)). The behavioral manifestations which are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Id.
In order to convict a defendant of driving while intoxicated, the State only needs to prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Vidal, 04-1139 (La.App. 5 Cir. 3/29/05), 901 So.2d 484, 487 (citing State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853).
The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; credibility will not be re-weighed on appeal. State v. Trepagnier, 07-749, 07-750 (La.App. 5 Cir. 3/11/08), 982 So.2d 185, 191, writ denied, 08-0784 (La.10/24/08), 992 So.2d 1033.
. In the present case, Mr. Moore testified that defendant collided with two vehicles, placed his vehicle in reverse, and then hit a guard rail as he drove off. Mr. Moore and Ms. Meyers both testified that defendant drove off with his hood raised up and his vehicle emitting smoke. Detective Brens testified that defendant struck one of the vehicles as he straddled the center line between two vehicles, and then immediately thereafter. rear-ended another vehicle ahead in the left travel lane.
Deputies Remondet and Cannatella, Dr. Morse, Ms. Valenti, and Ms. Malone all testified that defendant had slurred speech. Deputies Remondet and Canna-tella both testified that defendant appeared to have been driving while intoxicated. Deputy Remondet testified that defendant appeared sluggish and had | ^bloodshot eyes. Deputy Cannatella testified that defendant stumbled as he walked and almost stumbled into oncoming traffic. He also testified that defendant appeared to fall asleep during his attempt to conduct a horizontal gaze nystagmus test and refused to submit to chemical tests. Deputy Cannatella testified that defendant had a pill bottle of Alprazolam that had been filled on the date of the incident, and there were only 21 pills remaining in the pill bottle out of the 40-pill prescription filled earlier that day. Dr. Morse testified that he diagnosed defendant with acute benzodiazepine intoxication based on his physical examination of defendant, defendant’s laboratory test results, and defendant’s statement that he ingested a significant amount of Alprazo-lam that day.
Ms. Valenti, the EMT, testified that defendant was not completely oriented, and defendant was agitated and attempted to exit the stretcher while being transported in the ambulance. Ms. Malone, the emergency room nurse, testified that defendant appeared lethargic and drowsy. Deputy Cannatella, Dr. Morse, Ms. Valenti, and Ms. Malone all testified that defendant admitted that he had ingested Alprazolam on the date of the incident.
In State v. Kestle, 07-1573 (La.12/02/08), 996 So.2d 275, the Louisiana Supreme Court found sufficient evidence to establish that the defendant was intoxicated *1203 when the trooper testified that the defendant was severely impaired, his speech was slurred, he had trouble following directions, his balance was poor, he fell down, and he refused to submit to chemical tests. Id. at 281. The trooper also testified that based on his experience as a law enforcement officer, the defendant appeared to be impaired by a narcotic substance. Id. at 280. The defendant argued that he was tired from working long hours, had difficulty walking in the gravel because of his sandals, and had back problems. Id. The Louisiana Supreme Court reversed this Court’s finding that the evidence was insufficient to support the | ^defendant’s conviction for driving while intoxicated and reinstated the trial court’s conviction. Id. at 282.
Similar to Kestle, in the present case, Deputies Remondet and Cannatella both testified that defendant appeared to be impaired. Multiple witnesses testified that defendant had slurred speech. Deputy Cannatella testified that defendant stumbled as he walked and almost stumbled into traffic and that defendant refused to submit to chemical tests. Defendant admitted to ingesting Alprazolam on the date of the incident and was in possession of a pill bottle of Alprazolam that was filled on the date of the incident, but which only had 21 pills remaining in the pill bottle out of the 40-pill prescription. Although defendant argues that his behavior was attributable to injuries sustained in the motor vehicle accident, the trial court was within its discretion to reject defendant’s explanation for his behavior. Further, Dr. Morse diagnosed defendant with acute benzodiazepine intoxication based on his physical examination of defendant, defendant’s laboratory test results, and defendant’s statement that he had ingested a significant amount of Alprazolam that day. Upon our review of the record as a whole, we find that the evidence presented by the State, when viewed in the light most favorable to the prosecution as required by the Jackson standard, was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant was operating a motor vehicle while intoxicated.
Additionally, defendant invokes affirmative defenses in accordance with La. R.S. 14:98(A)(l)(d)(ii) and (e)(ii), which respectively allow affirmative defenses when either the label on the container of the prescription drug does not contain a warning against combining medication with alcohol and/or when the operator of a vehicle did not knowingly consume quantities of the drug(s) which substantially | ^exceed the dosage prescribed by the physician or the dosage recommended by the manufacturer of the drug. Defendant asserts that there is no testimony that indicates that he abused his prescription medication dosage, and the pill bottle did not contain a warning label regarding driving while taking the medication.
The State contends that these affirmative defenses are not available to defendant because Alprazolam is a Schedule IV controlled dangerous substance. The State asserts that defendant was prosecuted pursuant to La. R.S. 14:98(A)(l)(c), and the affirmative defenses invoked by defendant are only available to prosecutions under La. R.S. 14:98(A)(l)(d) and (e), which involve drugs that are not controlled dangerous substances. Therefore, the State argues that whether the Alprazolam bottle had a warning label or not is of no consequence to this case.
Upon review, we find that defendant’s attempt to assert these affirmative defenses is misplaced. Defendant relies on La. R.S. 14:98(A)(l)(d) and (e), which provide in pertinent part:
*1204 (A)(1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
[[Image here]]
(d)(i) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
(ii) It shall be an affirmative defense to any charge under this Subparagraph pursuant to this Section that the label on the container of the prescription drug or the manufacturer’s package of the drug does not contain a warning against combining the medication with alcohol.
(e)(i) The operator is under the influence of one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
11fi(ii) It shall be an affirmative defense to any charge under this Subparagraph pursuant to this Section that the operator did not knowingly consume quantities of the drug or drugs which substantially exceed the dosage prescribed by the physician or the dosage recommended by the manufacturer of the drug.
(Emphasis added).
The above-cited statute clearly states that these affirmative defenses apply only to the noted particular subparagraphs, and that these particular subparagraphs only apply to “drugs which are not controlled dangerous substances.” La. R.S. 14:98(A)(l)(d) and (e) (emphasis added). Alprazolam is a Schedule IV controlled dangerous substance listed in La. R.S. 40:964. Consequently, these affirmative defenses are inapplicable to defendant’s case.
For the foregoing reasons, defendant’s assignment of error is without merit.

ERRORS PATENT REVIEW

Defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether the defendant makes such a request.
The trial court sentenced defendant to fifteen years imprisonment at hard labor with credit for time served. Contrary to the transcript, the minute entry states that the trial court also ordered defendant to pay a fine of $5,000.00. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
La. R.S. 14:98(E)(l)(a) provides that the offender “shall be fined five thousand dollars.” Therefore, the sentence imposed is illegally lenient because the trial court failed to impose a mandatory fíne on the record at trial.
117An illegal sentence may be corrected at any time by an appellate court on review. State v. McCray, 07-143 (La.App. 5 Cir. 7/30/07), 966 So.2d 616, 622, writ denied, 07-1826 (La.2/1/08), 976 So.2d 715 (citing La.C.Cr.P. art. 882(A)). This authority is permissive rather than mandatory. State v. Shaw, 12-686 (La.App. 5 Cir. 1/16/13), 108 So.3d 1189, 1198 (citing State v. Horton, 09-250 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 376). As in Shaw *1205 and Horton, we decline to order imposition of the mandatory fíne or to remand this matter for imposition of the mandatory fine.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. Deputy Remondet was off duty at the time.

. Alprazolam is also known as Xanax. For the purposes of consistency, this drug will only be referred to as "Alprazolam” in this opinion.

. Deputy Cannatella testified that one of the nurses in the hospital assisted him in counting the pills remaining in the prescription bottle.

. Defendant was also cited for and convicted of reckless operation of a motor vehicle in violation of La. R.S. 14:99, and hit-and-run driving in violation of La. R.S. 14:100, but those convictions are not involved in this appeal.

.The Glasgow Coma Scale is apparently a neurological scale that aims at providing a reliable, objective way of recording the conscious state of a person.

. Alprazolam is a type of benzodiazepine.

. Defendant stipulated to his prior DWI convictions.