FREDERICKA HOMBERG WICKER, Judge.
[ 2Pefendant, Kathleen Wall, appeals her conviction and sentence for operating a vehicle while under the influence of a controlled dangerous substance, having been previously convicted three times, in violation of La. R.S. 14:98(A)(E). For the following reasons, we affirm defendant’s conviction but vacate the sentence imposed and remand for resentencing in compliance with La. R.S. 14:98(E).

STATEMENT OF THE CASE

On April 3, 2013, the Jefferson Parish District Attorney filed a bill of information charging defendant with operating a vehicle while intoxicated, having been previously convicted three times, in violation of La. R.S. 14:98(A)(E). Defendant was arraigned and pled not guilty.
Defendant proceeded to trial and a six-person jury unanimously found defendant guilty as charged. On May 9, 2014, defendant filed a motion for new trial, which the trial court denied. On that same date, the trial court sentenced | ^defendant under La. R.S. 14:98(E) to ten years imprisonment at hard labor with eight years of the sentence suspended. The trial court further ordered that defendant be placed on active probation for five years upon her release with the first year of probation on home incarceration. In addition to the general conditions of probation, the trial judge ordered that defendant pay a $5,000.00 fíne, participate in 40 eight-hour days of community service, immediately undergo an *966 evaluation and complete any recommended treatment, submit to inpatient treatment for a period of not less than three months followed by outpatient treatment for not less than one year, and not drive for the duration of probation.[1] This timely appeal follows.

FACTUAL BACKGROUND

Detective Roy Lambert with the Jefferson Parish Sheriffs Office testified that on Saturday, October 20, 2012, at approximately 7:00 a.m. or 8:00 a.m., he received a call regarding a female asleep at the wheel of a vehicle parked at a Shell gas station located at 5900 West Metairie Avenue in Jefferson Parish. After locating the vehicle matching the description provided by the dispatch, Detective Lambert observed defendant “slumped over the wheel” of the vehicle. He explained that the vehicle was “running” and was “pressed up against a raised sidewalk” at the gas station, as if the vehicle was unable to move any further. According to Detective Lambert, defendant appeared to be asleep and the vehicle was in the drive gear. He testified that the only thing preventing the vehicle from “running into” the business was the raised sidewalk.
Detective Lambert expressed that he was concerned for the welfare of defendant and knocked on the vehicle’s window several times, attempting to wake defendant. After several attempts to wake defendant, she appeared to slightly Uawaken but still appeared disoriented and tired. Detective Lambert instructed defendant to open the door but defendant had much difficulty locating the locking mechanism on the seat belt and had trouble orienting her finger directly to the button she was attempting to press.
Detective Lambert stated that he and other officers who had arrived on the scene asked defendant to exit the vehicle and, with much difficulty, she stepped out of the vehicle and nearly fell. Detective Lambert testified that, after defendant exited the vehicle, he entered the vehicle to apply the brakes and place the vehicle in the park position.
Detective Lambert explained that defendant had difficulty standing and more difficulty walking. After noticing defendant’s swayed balance, difficulty standing and walking without assistance, bloodshot eyes, and slurred speech, he decided to conduct a standardized field sobriety test.[2] According to Detective Lambert, he checked defendant’s pupil size and looked for any involuntary jerking of the eyes, also known as nystagmus, while in a resting position.[3] Detective Lambert conducted an actual nystagmus test and explained that defendant exhibited six out of the six clues he looks for during the horizontal nystagmus test and two out of the two clues he looks for in the vertical nystagmus test — which he stated indicates the influence of certain types of narcotics or high levels of alcohol.
Detective Lambert stated that he also attempted to conduct the “Walk-and-Turn Test.” He explained that, while administering the test, defendant attempted to proceed with the test prior to receiving instructions on how many steps to take and *967 that it appeared as if defendant was about to fall. Detective Lambert stated that, given defendant’s unsteady balance, he decided that it was too dangerous for | sdefendant to proceed with the test. According to Detective Lambert, he believed that he had sufficient probable cause at that point to arrest defendant.
After he arrested defendant, Detective Lambert informed her of her Miranda:[4] rights and transported her to the Harahan lockup facility, where he further advised defendant of her rights pertaining to chemical testing. Detective Lambert then obtained defendant’s verbal and written consent to conduct a blood test.[5]
Captain Manuel Adams Jr. of the Hara-han Police Department testified that he worked at the Harahan lockup on the date of defendant’s arrest. Captain Adams testified that he is certified in Advanced Roadside Impaired Driving Enforcement (ARIDE) and explained that the ARIDE test checks for impairment due to any narcotic or drugs within the system. Captain Adams advised defendant of her rights and then conducted the Lack of Convergence test, which he explained identifies the possible presence of a narcotic in the system based on whether her eyes would properly cross when following a stimulus. According to Captain Adams, defendant exhibited a lack of convergence both times, indicating possible presence of narcotics in her system. On cross-examination, Captain Adams acknowledged that an unknown percentage of people are unable to cross their eyes. Captain Adams testified that he also conducted the Rhom-berg Balance Test, which checks for swaying, eye tremors, and “internal clock.” According to Captain Adams, defendant was sluggish, exhibited droopy eyelids, and stumbled. Further, he explained that defendant’s “internal clock” was extremely short as she indicated that only fifteen seconds had passed when actually thirty seconds had elapsed. Captain Adams testified that he believed he observed signs of impairment. CaptainJ^Adams further testified that, after he advised defendant of the results of the Rhomberg Balance Test, she admitted to taking a half a Lortab, a half a Xanax, and a Soma at approximately 5:00 a.m. that morning.
Nam Tran, a toxicology analyst for the State Police Crime Lab, testified on.behalf of the state that he received a request to perform a toxicological screen on a blood alcohol kit labeled as defendant’s blood. Mr. Tran stated that he performed testing on the blood alcohol kit and generated a report for the toxicology analysis. He testified that three controlled dangerous substances, Carisoprodol (also known as Soma), Meprobamate ' (a metabolite of Soma), and Hydrocodone (also known as Vicodin or Lortab, depending on the manufacturer), were detected in defendant’s blood. Mr. Tran stated that Carisoprodol and Meprobamate are both Schedule IV controlled dangerous substances and that Hydrocodone is a Schedule II controlled dangerous substance.
During cross-examination, Mr. Tran explained that the report does not indicate the quantity of the substances in defendant’s system but only that the substances were ■ present. He also stated that the report did not determine the amount of time that had elapsed since defendant ingested the substances! On redirect, Mr. *968 Tran explained the difference between drugs found in urine and drugs found in blood. He testified that urine indicates the back history of the substances in an individual’s system for a longer period of time but explained that it is common knowledge that if the drug is circulating in the bloodstream, then it is “immediate.”
Sergeant Joel O’Lear of the Jefferson Parish Sheriffs Office was accepted as an expert in latent print examination by stipulation. Sergeant O’Lear testified on behalf of the state and explained that he compared defendant’s fingerprints to the arrest print cards attached to the three certified conviction packets introduced 17into evidence. He testified that the defendant’s fingerprints from the date of trial matched the fingerprints from the three prior convictions for violations of La. R.S. 14:98 (Operating a Vehicle while Intoxicated).
Fred Bodungen, defendant’s husband, testified that he and defendant lived on Lark Street in Metairie, approximately two and a half blocks away from the Shell gas station where the incident occurred. Mr. Bodungen explained that his daily routine was to visit the gas station each morning to purchase breakfast for his wife. Mr. Bodungen explained that if defendant does not eat, she becomes jittery, begins vomiting, and has to go to the hospital. He explained that her condition is from her medical issues and not from the prescribed drugs. Mr. Bodungen stated that he was not with defendant on October 20, 2012, because he was unable to wake up that morning.
Mr. Bodungen testified that defendant had been disabled for approximately eight years. He explained that defendant has chronic illnesses, including bleeding ulcers, spurs on her heels, and back problems. Mr. Bodungen also testified that defendant had hernia surgery, which still causes her problems, and was advised to schedule a gallbladder operation as soon as possible.
Mr. Bodungen acknowledged that defendant understands that there is a risk in taking her medications and operating her vehicle. He further acknowledged that defendant knew that she should not have driven on the date of the incident and that she made the decision to drive herself. Mr. Bodungen explained that defendant was unable to walk to the store because of the pain from her heel spurs. He also testified that defendant was easily stressed, which affects her ability to follow instructions.[6]

DISCUSSION

On appeal, defendant assigns as error the sufficiency of the evidence against hel-as well as the trial court’s denial of her request for mistrial. We address each assignment of error in turn.
Sufficiency of the Evidence[7]
In her first assignment of error, defendant challenges the sufficiency of the evidence against her. Defendant argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that defendant was operating a vehicle while under the influence of a controlled dangerous substance. Defendant argues *969 that she was parked in a vehicle and that there was no testimony that she was observed operating the vehicle in which she was asleep. Defendant further contends that the State failed to exclude the reasonable hypothesis that defendant either became intoxicated after she parked her vehicle at the gas station or that she drove her vehicle to the gas station prior to exhibiting effects of the medications that she had ingested. Defendant also argues that the state failed to prove that she was a fourth offender with three prior convictions, as required under La. R.S. 14:98(E).
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Michel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443; State v. Singleton, 05-622, p. 7 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 651.
In the present case, defendant was convicted of operating a vehicle while intoxicated in violation of La. R.S. 14:98(A)(E) after having been previously three times convicted of operating a vehicle while intoxicated. At the time of the offense, La. R.S. 14:98(A) provided, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
⅜ ⅜ $
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964;
|inIn order to convict a defendant of operating a vehicle while intoxicated, the state must only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Vidal, 04-1139 (La. App. 5 Cir. 3/29/05), 901 So.2d 484, 487 (citing State v. Bourgeois, 00-1585 (La. App. 5 Cir. 3/14/01), 785 So.2d 848, 853). To convict a defendant of a fourth offense operating a vehicle while intoxicated, the state must also show that the defendant had three other valid convictions. State v. White, 44 So.3d 750, 755 (La.App. 5 Cir. 6/29/10).
*970 The Louisiana Supreme Court has defined intoxication as the impairment, however slight, to the ability of a person to operate an automobile. State v. Delanueville, 11-379 (La.App. 5 Cir. 2/14/12), 90 So.3d 15, 20, writ denied, 12-0630 (La.9/21/12), 98 So.3d 325. The impairment need not be “whole” but only to the degree that the influence caused a person to operate the vehicle in a manner different from that in which it would be operated by an ordinarily cautious and prudent person. Id.; see also State v. Davis, 13-313 (La.App. 5 Cir. 10/30/13), 128 So.3d 1195, 1201-02, writ denied, 13-2748 (La.5/16/14), 139 So.3d 1023.
The jurisprudence has established that intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify, and some behavioral signs, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. The behavioral manifestations which are sufficient to support a charge .of driving while intoxicated must be determined on a case-by-case basis. Delanueville, supra.
La. R.S. 14:98 does not require proof that the defendant was driving a vehicle at the time of the offense, ¿'nd Louisiana jurisprudence recognizes that the term “operating” is broader than the term “driving.” State v. Rossi, 98-1253 (La.App. 5 Cir. 4/14/99), 734 So.2d 102, writ denied, 99-0605 (La.4/23/99), 742 So.2d 886. (See also State v. White, 09-1071 (La.App. 5 Cir. 6/29/10), 44 So.3d 750, 755, and State v. Sims, 426 So.2d 148, 151 (La.1983) (wherein the reviewing courts affirmed defendants’ convictions for operating a vehicle while intoxicated under similar facts where the defendants were found slumped over their vehicles’ steering wheels with the engines running.)) However, in order to operate a motor vehicle, defendant must have exercised some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion. State v. White, supra.
In this case, Detective Lambert testified that he discovered defendant “slumped over the wheel” of her vehicle with the engine “running” in active “drive” gear and the vehicle “pressed up against a raised sidewalk” at the gas station. Detective Lambert further testified that defendant was disoriented and had difficulty standing and walking without assistance. He further stated that he observed that defendant had bloodshot eyes and slurred speech. He testified that defendant had difficulty maintaining balance and remaining awake during the field sobriety test.
Captain Adams testified that after conducting an ARIDE test on defendant, the results indicated the possible presence of narcotics in defendant’s system. He also testified that he observed signs of impairment or controlled dangerous substance issues including that defendant appeared sluggish, exhibited droopy eyes, and stumbled, Captain Adams also testified that defendant’s “internal clock” was extremely short as she indicated that only fifteen seconds had passed when actually thirty seconds had elapsed. Detective Lambert and Captain Adams both testified that defendant had trouble following, instructions and that defendant admitted to consuming one Soma, a half of a Xanax, and a half of a Lortab.
| ^Further, Mr. Tran testified that three controlled dangerous substances, Cariso-prodol (Schedule IV), Meprobamate (Schedule IV), and Hydrocodone (Schedule II) were detected in defendant’s blood. Accordingly, we find that the state presented sufficient evidence to show that defendant operated a vehicle while under the *971 influence of controlled dangerous substances in violation of La. R.S. 14:98(A).
Concerning defendant’s argument that the state failed to prove the three predicate convictions to support her conviction as a fourth offender, we find this argument to be without merit.[8] To convict a defendant of a fourth offense of operating a vehicle while intoxicated, the state must also show that the defendant had three other valid convictions. La. R.S. 14:98(E). State v. Delanueville, supra.
At trial, the state introduced three Jefferson Parish certified conviction packets, which included defendant’s guilty plea forms — signed by defendant and her counsel and dated April 3, 2006 — showing that defendant pled guilty to all three convictions of operating a motor vehicle in violation of La. R.S. 14:98.[9] Further, Sergeant O’Lear, an expert in latent print examination, testified that his fingerprint examination showed that defendant was the same person convicted of the three previous charges of operating a vehicle while intoxicated. Accordingly, we find the state presented sufficient evidence to prove defendant’s predicate convictions. This assignment is without merit.

Motions for Mistrial

In her second assignment of error, defendant states that the trial judge erred in denying her two requests for mistrial. Defendant asserts that the state elicited opinion testimony regarding intoxication from two witnesses, Detective Lambert | isand Mr. Tran, contrary to the court’s granting of defendant’s pre-trial motion in limine.
Immediately prior to trial, defendant filed a motion in limine seeking to prohibit the state from eliciting opinion testimony from investigating officers concerning intoxication. After a contradictory hearing prior to trial, the trial judge granted the motion in limine, finding that the state could question the investigating officers regarding their “observations and indications” but could not elicit the investigating officers’ testimony of “opinions regarding intoxication.”
Under La.C.Cr.P. art. 771, a mistrial is discretionary when a witness makes an irrelevant remark that might prejudice the defendant. Article 771 gives the trial court the option to either admonish the jury, upon motion of the defendant, or, if an admonition does not appear sufficient, to declare a mistrial. State v. Adams, 13-992 (La.App. 5 Cir. 5/21/14), 142 So.3d 265, 272; State v. Johnson, 10-209 (La.App. 5 Cir. 10/12/10), 52 So.3d 110, 124, writ denied, 10-2546 (La.4/1/11), 60 So.3d 1248.
A mistrial should be granted under Article 771 only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Thomas, 08-390 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, 86-87, writ denied, 09-626 (La.11/25/09), 22 So.3d 170; State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1271-72.
A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to a defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial *972 of a motion for mistrial will not be disturbed absent an abuse of discretion. State v. Lagarde, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684.
In this appeal, defendant asserts that the trial judge abused her discretion in denying defendant’s two separate requests for mistrial, which took place during Detective Lambert’s and Mr. Tran’s testimony. For the following reasons, we find the trial judge did not abuse her discretion in denying defendant’s motions for mistrial.

Detective Lambert’s Testimony

During Detective Lambert’s testimony concerning the field sobriety test he administered to defendant, the following took place:
Q. When is vertical nystagmus present?
A. It’s present if there’s a certain— certain types of narcotic substances or an increasingly high level of alcohol. So there — it can range by degrees. The distinct nystagmus at the maximum elevation is much more pronounced, the higher levels of alcohol or the higher amounts of this particular controlled narcotic substance, which that’s the way with every test. It’s more distinct based on the amount.
Following Detective Lambert’s response, defense counsel requested to approach the bench and then moved for a mistrial. Defense counsel asserted that Detective Lambert’s testimony constituted opinion testimony concerning levels of intoxication and was thus improper under the trial court’s granting of the defense’s motion in limine. The prosecutor indicated he would “reign him in” and explained that through Detective Lambert’s training, he learned that vertical nystagmus is only present in certain cases. The trial judge denied defendant’s request for mistrial, but told the prosecutor to “watch that” and further instructed the jury to disregard the response to the last question. Thereafter, the prosecutor informed the witness to only testify concerning his observations or what he saw concerning the defendant.
|1BWe find that defendant has not shown that the trial judge’s denial of her request for mistrial resulted in substantial prejudice or the denial of a fair trial. The remainder of the testimony by both investigating officers reflects that defendant was impaired with slurred speech, bloodshot eyes, and difficulty standing and walking without assistance. Intoxication is an observable condition about which witnesses may testify. Delanueville, supra.
Upon defendant’s request, the trial judge instructed the jury to disregard the testimony at issue and the prosecutor continued questioning Detective Lambert, instructing him to only testify to his own observations from the date of the incident. We find that the trial judge did not abuse her discretion in denying defendant’s motion for mistrial. This argument is without merit.

Mr. Tran’s Testimony

Mr. Tran, a toxicology analyst for the State Police Crime Lab, testified on direct examination that he conducted testing on defendant’s blood and that the results showed a presence of three controlled dangerous substances, Carisoprodol (Schedule IV), Meprobamate (Schedule IV), and Hydrocodone (Schedule II). On cross-examination, defense counsel questioned Mr. Tran concerning whether he was able to detect “levels” or quantity of the substances in defendant’s blood, to which Mr. Tran replied that he was only able to detect the presence of the substances in defendant’s blood and was unable to detect the quantity or levels of the substances detected in defendant’s blood. Defense counsel further questioned Mr. *973 Tran about “retrograde extrapolation!;,]” which is the metabolism of alcohol or drugs in the blood system, and questioned whether he could interpret the report to determine how long the substances had been in defendant’s system. On redirect examination, the prosecutor asked the following:
|1fiQ. And what is the difference as far as how long drugs are in your system between ... blood versus urine?
A. Blood — urine is a — is a waste product. And what urine does, it tells your back history of what was in that person’s system for a longer period of time. But it’s a waste product. It could be some — [t]he drug could have been there for a few weeks, a month, or a few days.
With the blood, it’s common knowledge that if the drug is in the blood, it’s circulating through the brain. And if you have a drug much like alcohol that’s in your — that’s in your blood circulating through the brain — your brain, it has an effect. So that’s the difference. One is historical; one is immediate.
Defense counsel then moved for a mistrial, again arguing that Mr. Tran’s testimony encroached upon opinion testimony of intoxication levels in defendant’s blood. The trial judge found that Mr. Tran’s response did not encroach upon opinion testimony concerning the level or amount of drugs in defendant’s system and therefore denied the request for mistrial. Defense counsel did not request that the trial judge admonish the jury.[10] On appeal, defendant asserts that the trial judge erred in denying her request for a mistrial. The state responds by asserting that defense counsel “opened the door” to testimony concerning metabolization of alcohol or drugs in an individual’s system and further that Mr. Tran did not testify at all concerning defendant’s levels because the report did not provide that information.
Upon review, we find that the trial judge did not abuse her discretion in denying defendant’s motion for mistrial. First, defense counsel “opened the door” when he questioned Mr. Tran concerning metabo-lization of alcohol or drugs in an individual’s body — after Mr. Tran had already testified that the report at issue did not show quantity or levels of the substances in defendant’s blood. Second, we find that, even if the testimony was admitted in error, defendant has not shown that |17the testimony caused substantial prejudice or deprived her of her right to a fair trial.
Accordingly, we find defendant’s second assignment of error to be without merit.

ERRORS PATENT REVIEW

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920 and address the following error:
A review of the record reveals that, during sentencing, the trial court failed to make any mention of electronic monitoring, curfew restrictions, or home visitation as required by La. R.S. 14:98(E)(3)(a). In addition, the record does not reflect that defendant was provided a certificate of conditions of home incarceration, as required by La. R.S. 14:98(E)(3)(c). This Court has previously found that similar deficiencies rendered similar sentences illegally lenient. See Delanueville, 90 So.3d at 28-30; see also State v. Hunter, 13-82 (La.App. 5 Cir. 7/30/13), 121 So.3d 782, 787.
In Delanueville, the trial court failed to order the defendant’s vehicle seized and *974 sold as required by La. R.S. 14:98(E)(2)(a), failed to specify the conditions of home incarceration as required by La. R.S. 14:98(E)(3)(a) and (b), and failed to provide defendant with a certificate of conditions of home incarceration as required by La. R.S. 14:98(E)(3)(c). As a result, this Court vacated the sentence and remanded for re-sentencing. Delanueville, 90 So.3d at 30. In light of similar deficiencies in defendant’s sentence, we find the sentence is likewise illegally lenient. Consequently, defendant’s sentence is vacated and the matter is remanded for resentencing in compliance with La. R.S. 14:98(E).

J^CONCLUSION

For the foregoing reasons, we affirm defendant’s conviction for a fourth offense of operating a vehicle while intoxicated in violation of La. R.S. 14:98(A)(E). However, we vacate defendant’s sentence and remand this matter for resentencing in compliance with La. R.S. 14:98(E).

CONVICTION AFFIRMED: SENTENCE VACATED; REMANDED.

. The trial court ordered that defendant is prohibited from driving for the first year of active probation upon her release and informed defendant that she may petition the court thereafter for reinstatement.

. Detective Lambert testified on behalf of the state that he had field sobriety testing certification.

.He explained that he first ran a series of tests to eliminate any concerns such as head injuries or any type of physiological or neurological issues.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The state and the defense jointly stipulated that if Troy Evans was present to testify he would be qualified or certified as an emergency medical technician and also certified as having sufficient training to draw blood. Both parties further stipulated that Mr, Evans drew defendant’s blood in this matter.

. Mr. Bodungen also stated that defendant had post-traumatic stress from previously dealing with officers. He explained that approximately eight to ten years ago, a Jefferson Parish officer kicked in the front door of their home and waived a gun at defendant, when she had just exited the shower and was undressed.

. When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. White, 09-1071 (La.App. 5 Cir. 6/29/10), 44 So.3d 750.

, The record reflects that defendant did not dispute her prior convictions at the trial court level.

. The conviction packets reflect three separate docket numbers (#F1511586, #F1586644, and #F611077) in First Parish Court for the Parish of Jefferson with three separate offense dates.

. Absent a request for an admonition, the trial judge need not admonish the jury. State v. Jackson, 04-293 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-232 (La.5/6/05), 901 So.2d 1094.